### 57093. DONMOYER v. COLUMBUS BANK & TRUST COMPANY.

BIRDSONG, Judge.

Paul L. Donmoyer, d/b/a Paul's Place in Columbus, Georgia, carried on his banking business with Columbus Bank & Trust Co. On September 8, 1977, an employee of the bank was presented with a notice of delinquency issued by the Georgia Department of Revenue by one of its field service representatives. Erroneously believing that she had been handed a fi. fa. in lieu of the notice of delinquency, this employee debited two checking accounts of Mr. Donmoyer's and paid off the notice of

delinquency in the amount of $1,090.52, shown as the amount of the deficiency of the Georgia sales and use tax covering the taxable period from April 1, 1977 through June 30, 1977. She debited Donmoyer's two accounts accordingly, that is, account number 17-55-702 for $490.23 and account number 37-74-074 in the amount of $629.79. She then notified Donmoyer the same day by letter dated September 8, 1977, that she had debited the accounts as shown above. During the period from September 8 through at least February, 1978, approximately 100 of Donmoyer's checks were returned due to insufficient funds and various service charges were charged against his account by the bank.

Donmoyer brought the suit against the bank seeking compensatory and punitive damages, alleging first that the bank was not authorized to transfer any money to the State Revenue Department on his behalf; that (despite Donmoyer's having had notice of the unauthorized payout from his account) the bank was obliged to honor any checks that he made pay to the order of any person or persons up to the full amount of the money deposited with the bank; and that the bank wrongfully dishonored certain checks and charged certain penalties against his account, resulting in specifically alleged damages. By alternative pleadings, Donmoyer alleged that the bank had converted money belonging to him to its own use, which was improper, without justification and with malice. By several amendments his complaint alleges the loss of his business by reason of his cash flow problems, eviction by the landlord and averments of malice on the part of the bank with conscious indifference to the consequences, thereby increasing the amount of compensatory and punitive damages sought.

Defendant bank answered, admitting jurisdiction and the existence of the two checking accounts. It also alleged that as a result of its prompt payment in response to the notice of delinquency it reduced Donmoyer's liability to the Department of Revenue and obtained release of Donmoyer's accounts which would not have been possible if the bank had frozen Donmoyer's account upon receipt of the notice of delinquency as required by statutory law, all to the benefit of Donmoyer. It also

pleaded defenses of assumption of risk by reason of the fact that Donmoyer continued to write checks after undisputed notice that funds were not available due to the debiting of his account, that he wrote checks for amounts which exceeded the amount by which his accounts had been debited; and, thus any damages to him were solely and proximately caused by his own actions and business practices.

After discovery plaintiff moved for summary judgment on the issue of liability, and the defendant moved for summary judgment in its favor. Donmoyer's motion for summary judgment was denied, and the bank's motion was granted. This appeal followed. *Held:*

The central issue in this case is whether the appellant Donmoyer has been harmed by the release of funds to the state in response to notice of delinquency filed by the State Revenue Department. Donmoyer has never denied that the sales tax was due the state. He simply argues that the sales tax money which was in his account should not have been released to the state without his consent. The evidence offered by the agent for the State Revenue Department unequivocally shows that whether the money was paid immediately or frozen for thirty days, the money never belonged to Donmoyer at all but always was the property of the state. His testimony indicated that Donmoyer was nothing more than the collection agent for the state, and thus, by implication that Donmoyer mingled state money with his own. His testimony leads to the conclusion that absent some satisfactory arrangement between the state and Donmoyer, the bank was obligated to surrender the amount of sales tax either immediately or at the end of thirty days. Thus, though the bank wrongfully surrendered the funds immediately upon the basis of the notice of delinquency, its good faith is manifest in view of the fact that Donmoyer owed the tax to the state and never made other arrangements to satisy his tax liability.

The legislative intent with regard to a bank's liability for wrongful treatment of funds is clearly shown in Code § 109A-4—403. Though that section deals with wrongful dishonor of items presented for payment, it manifests the intent to make a bank liable for damages

*proximately caused* by its wrongful handling of an item. When a bank makes wrongful payment upon an unauthorized signature, the depositor has an obligation to exercise reasonable care to rectify the situation and minimize the damage done. If the depositor fails in his own obligations once he has notice of a payment on an unauthorized signature, he is precluded from recovery against the bank (Code Ann. § 109A-4—406).

While Code Ann. §§ 109A-4—402 and 109A-4—406 admittedly deal with wrongful dishonor of items and payment on unauthorized signatures, these are wrongful treatments of depositors' funds which are indistinguishable in principle and effect from the wrongful treatment of Donmoyer's account by the defendant bank. The underlying legislative intent should remain consistent that the bank is liable for damages *proximately caused* by its wrongful treatment, and that the depositor has the obligation to exercise reasonable care to diminish the loss.

Donmoyer's claim was based upon damages caused by the refusal by the bank to honor Donmoyer's checks because of insufficient funds and upon an alleged unlawful conversion of funds from his checking account. At the same breath, Donmoyer admits that the bank notified him that it had released $1,092.52 to the State Revenue Department on the same date that the money was released, to wit: September 8, 1977. In spite of his awareness that the bank had reduced the amount of money in his account by over $1,000, Donmoyer continued to do business as usual at least until February, 1978. During the period from September 8, 1977 until February, 1978, Donmoyer continued to place money in the checking account and wrote in excess of 500 checks, of which approximately 100 were returned for insufficient funds. There is no evidence showing that Donmoyer sought to reverse the action of the bank so as to make the tax funds available for purposes of meeting his personal checks or to make arrangements with his creditors to delay or spread out the payment schedules to accommodate the reduction of the checking account. Moreover, the trial court had evidence before it that had the bank acted properly upon the notice of delinquency

by freezing Donmoyer's account for thirty days, as it was legally required to do (Code Ann. § 92-3423a), Donmoyer would have suffered many more returned checks in the first thirty days. In fact, had the account been frozen, any checks Donmoyer had then outstanding, or any checks he wrote during the thirty days, would have been dishonored—rightfully. Once he received notice of the wrongful payment from his account he was obliged to use reasonable care to minimize and avoid future loss.

We conclude that the evidence shows without dispute that Donmoyer suffered no damages through the actions of the bank. Any embarrassment either personal or economic suffered by Donmoyer was caused by his own poor business activities.

The court was warranted in finding in effect that the bank minimized Donmoyer's difficulties by paying the tax deficiency and thus releasing Donmoyer's account for continued activities. The trial court thus was warranted in finding no issue of fact concerning damages. The consequential damages shown by Donmoyer were all directly and solely related to Donmoyer's demonstrated lack of business responsibility. Donmoyer does not argue the conversion count with any sincerity and rightfully so in view of the fact that the $1,092.52 was property of the state. The trial court did not err in the grant of summary judgment to the bank.

*Judgment affirmed. Deen, C. J., Quillian, P. J., Shulman, Banke and Underwood, JJ., concur. McMurray, P. J., Smith and Carley, JJ., dissent.*

ARGUED JANUARY 8, 1979 — DECIDED JULY 16, 1979 — REHEARING DENIED JULY 30, 1979.

*Kenneth S. Stepp,* for appellant.
*Page, Scrantom, Harris, McGlamry & Chapman, John T. Laney, III,* for appellee.

MCMURRAY, Presiding Judge, dissenting.

Donmoyer, who carried on his banking business with Columbus Bank & Trust Company, had two checking accounts depleted when on September 8, 1977, an

employee of the bank was presented with a notice of delinquency issued by the Georgia Department of Revenue by one of its field service representatives. Erroneously believing that she had been handed a fi. fa. in lieu of the notice of delinquency this employee debited two checking accounts of Donmoyer's and paid off the notice of delinquency. She then notified the depositor by letter of September 8, 1977, that she had debited the accounts as shown above. From September 30, 1977 through November 11, 1977, thereafter, many of Donmoyer's checks were returned due to insufficient funds and various service charges were charged against his account by the bank.

Whereupon Donmoyer sued the bank for compensatory and punitive damages alleging first that defendant was not authorized to transfer any money to the State Revenue Department for him; was obliged to honor any orders that he had made to pay to the order of any person or persons up to the full amount of the money deposited with the defendant; and defendant wrongfully dishonored certain checks and charged certain penalties against his account resulting in certain alleged specific damages. By alternative pleadings plaintiff alleged that defendant had converted money belonging to him to its own use, all of which was improper, without justification and with malice. By several amendments his complaint was amended to allege the loss of his business by reason of his cash flow problems, eviction by the landlord and averments of malice on the part of the defendant with conscious indifference to the consequences, therein increasing the amount of compensatory and punitive damages sought.

Defendant answered, admitting jurisdiction and the existence of two checking accounts. It contends that as a result of its prompt payment in response to the notice of delinquency it reduced plaintiff's liability to the Department of Revenue and obtained release of plaintiff's accounts which would not have been possible under the law if defendant had frozen the account upon receipt of the notice, thereby benefiting plaintiff. It also pleaded defenses of assumption of the risk by reason of the fact that the plaintiff continued to write checks after notice

that funds were not available due to the debiting of his account; writing checks for amounts which exceeded the amount by which his said accounts had been debited; thus any damages to him were solely and proximately caused by his own actions and business practices.

After discovery, plaintiff's motion for summary judgment on the issue of liability was denied, and defendant's motion was granted. The majority affirms in both instances. To this I cannot agree.

The defendant admits that it was presented a notice of delinquency by the Georgia Department of Revenue with reference to plaintiff which the defendant's employee mistakenly thought was a fi. fa., and that it paid out erroneously the sum of $1,090.52 from two accounts of the defendant, shown as the amount of the deficiency of plaintiff for Georgia sales and use taxes covering the taxable period April 1, 1977 through June 30, 1977. Defendant bank must honor the notice which is a lien on plaintiff's accounts which expires in 30 days by law from and after receipt of such notice. See Code Ann. § 92-3423a (Ga. L. 1951, pp. 360, 375). A violation of this statute is a misdemeanor punishable as such. See Code Ann. § 92-9955 (Ga. L. 1951, pp. 360, 376).

While a state revenue levying officer deposed that a fi. fa. would probably be issued if the amounts due were not paid during the 30-day period this is mere supposition of what would have or could have occurred, and is as to future acts which may never occur. This type of evidence is opinion testimony which may not be considered on summary judgment to require the grant of same. See *General Motors Corp. v. Wilson*, 120 Ga. App. 156, 157 (169 SE2d 749) and cases cited. Consequently, this is not evidence on which to base a summary judgment. This witness also deposed that extensions of time might be given to pay the indebtedness before the issuance of a fi. fa., and the funds might be released from the notice of delinquency. This is likewise opinion testimony which only a jury may consider. It thus precludes a summary judgment in favor of the defendant as movant. See *General Motors Corp. v. Wilson*, 120 Ga. App. 156, 157, supra.

The admission of the defendant that it had paid out

the funds of the plaintiff-depositor to another without any authority shows liability to the depositor for his funds which were not discharged in accordance with law. See Code Ann. § 109A-4—401 (Ga. L. 1962, pp. 156, 303); *F. D. I. C. v. Thompson,* 54 Ga. App. 611 (2) (188 SE 737); *Andrews v. Citizens Bank,* 139 Ga. App. 763, 765 (2) (229 SE2d 501).

Plaintiff next contends that the defendant bank having paid out his funds, thereafter it wrongfully dishonored certain checks he had written as the effect of paying of funds to the State Department of Revenue was not a payment of plaintiff's funds but funds of the bank as if it had paid out funds on a forged check. The defendant bank could therefore be liable for any damages proved by plaintiff and determined by a jury. See Code Ann. § 109A-4—402 (Ga. L. 1962, pp. 156, 303).

But if the defendant bank had properly honored the notice of delinquency, amounting to a lien on his deposit, his funds would have been frozen for 30 days in accordance with the law. Code Ann. § 92-3423a, supra. In that event, his checks would have likewise been dishonored. Further, the defendant bank has offered evidence that by paying out the indebtedness it saved the plaintiff money by preventing the freezing of his accounts, albeit, it immediately created a condition whereby there were insufficient funds in his account so as to cause it to dishonor certain checks for which it charged him a fee because of the overdrafts. Issues of material fact thus remain for jury determination as to whether or not plaintiff was damaged in any amount.

Defendant seeks to show that because of bad business management the plaintiff placed himself in the position of having his checks bounce due to the fact his account was overdrawn. However, not all of the evidence shows that his own mistakes of judgment and alleged reckless course of conduct caused his accounts to be overdrawn.

Therefore, it is my opinion that a jury question remains as to whether he was damaged, and in what amount, by the mistake of the bank in illegally paying funds to the State Department of Revenue. I would hold that the trial court erred in granting summary judgment in favor of the defendant.

I therefore respectfully dissent.

I am authorized to state that Judge Smith and Judge Carley join in this dissent.