A94A1289. KARRER v. GEORGIA STATE BANK OF ROME.
(452 SE2d 120)

POPE, Chief Judge.

Plaintiff, Phyllis E. Karrer, appeals the trial court's grant of summary judgment to defendant, Georgia State Bank of Rome (Bank).

On August 24, 1989, Karrer and her adult son opened a joint checking account with the Bank. At the time the account was opened, Karrer and her son signed a signature card/account agreement, which specified the terms and conditions of the account relationship. One of

the specific provisions of the agreement requires that the customer, in this case Karrer, report any account problems (with some exceptions not pertinent here) to the Bank within 60 days of receipt of her statement, or else lose her right to assert the problem against the Bank.

On Wednesday, August 15, 1990, Karrer tendered a check drawn on the account in the amount of $1,510 to Casey Construction (Casey). The check was signed by Karrer and dated the same day it was made out, August 15, 1990. At the time the check was tendered, Karrer admits that she knew there were insufficient funds in the account to cover the check. Karrer's checkbook ledger and the monthly bank statement issued by the Bank verify that when the check was tendered Karrer only had $836.94 in the account. Additionally, at no time during August 1990 was the account balance sufficient to pay the check.

Casey also maintained a checking account with the Bank in August 1990. On Friday morning, August 17, 1990, prior to the Bank's 4:00 p.m. cut-off time, Casey deposited the check to its account at the Bank, along with another check in the amount of $55, and received $965 in cash. On Saturday, August 18, 1990, Karrer went to the main office of the Bank and for the first time notified it that she wanted to stop payment on the check. Karrer asserts that she made this decision after meeting with Casey at approximately 6:00 p.m. on Friday, August 17, 1990. Karrer claims that it was at that time she concluded that Casey's work was defective.

Although Saturday is not a normal banking day for the Bank, in that the Bank does not carry on substantially all of its banking functions on that day, Karrer spoke with Nan Langford, a customer service representative at the Bank, and informed her that she wanted to stop payment on the check. Karrer claims she told Langford that if a stop-payment order could not be issued Karrer wanted to deposit sufficient funds in the account to cover the check. Langford accessed the account on the Bank's computer and informed Karrer that the check had not yet posted to the account because the account lacked sufficient funds to cover the check. Langford then contacted a Bank officer and was told that the Bank would do all that it could to stop payment on the check. At that time Karrer's stop-payment order was accepted. Additionally, Karrer claims that Langford assured her at that time that the Bank would stop payment on the check.

The stop-payment order was not implemented before the check was returned to Casey for insufficient funds. Whether the check was actually returned on Monday, August 20, 1990, or Tuesday, August 21, 1990, is disputed by the parties. The record shows, however, that the Bank, in its regular course of business, issued a notice of insufficient funds to Karrer advising her that the check had been presented, that the available balance in the account was insufficient to cover the

check, and that the check had been returned. Karrer denies ever seeing this notice. The bank statement, however, issued to Karrer for the period of July 24, 1990 through August 20, 1990, shows a $15 debit to the account for an insufficient funds item. This debit was dated August 20, 1990.

On August 24, 1990, after the Bank returned the check to Casey, Casey's attorney mailed a letter to Karrer by registered mail, return receipt requested. In the letter, the attorney informed Karrer that the check had been dishonored by the Bank. The letter also notified Karrer that if she did not pay the full amount of the check to Casey within 30 days a civil action might be filed against her or a criminal action under OCGA § 16-9-20 would be initiated. The letter was returned by the postal authorities marked "Unclaimed."

Both the letter from Casey's attorney and all the mailings from the Bank to Karrer were sent to the address Karrer gave the Bank when she opened the account. It is undisputed that the address was correct as of the time of the mailings. Karrer, however, in no way responded to the notice of insufficient funds and did not notify the Bank of any problem she had after receiving her bank statement, even though she has admitted she saw the statement prior to her October 9, 1990 arrest for issuance of a bad check. Additionally, Karrer did not contact Casey and try to make the check good prior to her arrest.

The record in this case shows that from the time they opened the account, Karrer and her son never effectively reconciled their checkbooks with the bank statements provided to them by the Bank. In fact, Karrer admits that the account was an unworkable situation. The record also shows that Karrer and her son were very disorganized, to say the least, when it came to picking up their mail. Karrer has testified that many times her son would pick up the mail and simply leave it wherever he happened to be. Karrer and her son stored some of their bank records and other mail in a rented warehouse. The warehouse was not organized in any way and documents placed in it were merely placed in boxes. Karrer has admitted that upon going through the documents stored in the warehouse she found many documents she previously did not know existed.

On October 9, 1990, Casey swore out a warrant for Karrer's arrest for the issuance of a bad check. Karrer was arrested on the same day and was subsequently indicted by the Chatooga County Grand Jury. She did not communicate to the Bank any problem she had concerning the requested stop-payment order or the return of the check for insufficient funds until June 4, 1991, approximately eight months after her arrest. Even when she closed her account on February 15, 1991, she said nothing to the Bank about its handling of the check or the stop-payment order. Karrer filed suit against the Bank on August

15, 1991 alleging that the Bank's failure to stop payment on the check and the Bank's return of the check for insufficient funds were wrongful, unlawful and improper. Karrer also claimed that the Bank's actions constituted a breach of the agreement between her and the Bank. The damages Karrer complains of allegedly arise from her arrest, imprisonment and subsequent indictment for the charge of issuing a bad check. On September 5, 1991, the Bank answered, denying liability and asserting various defenses. On September 13, 1993, the Bank filed a motion for summary judgment. By order dated November 9, 1993, the trial court granted the Bank's motion. On appeal, Karrer contends that the trial court erred in granting summary judgment to the Bank. We disagree and affirm.

1. Karrer contends that when the Bank failed to process the stop-payment order and returned the check to Casey for insufficient funds, the Bank committed an act tantamount to wrongful dishonor of the check, thereby subjecting the Bank to potential liability under OCGA § 11-4-402. We reject this contention.

OCGA § 11-4-402 provides as follows: "A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case." In this case, the damages Karrer complains of all arise from her arrest, imprisonment and subsequent indictment and prosecution for the offense of issuing a bad check. Under OCGA § 16-9-20 "[a] person commits the offense of deposit account fraud when such person makes, draws, utters, executes, or delivers an instrument for the payment of money on any bank or other depository in exchange for a present consideration or wages, *knowing* that it will not be honored by the drawee. For the purposes of this Code section, it is prima-facie evidence that the accused knew that the instrument would not be honored if: . . . (2) Payment was refused by the drawee for lack of funds upon presentation within 30 days after delivery and the accused . . . shall not have tendered the holder thereof the amount due thereon, together with a service charge, within ten days after receiving written notice that payment was refused upon such instrument." (Emphasis supplied.) Id.

Here, Karrer has admitted that at the time she delivered the check to Casey on August 15, 1990, she knew that her account lacked funds sufficient to cover the check. Furthermore, it is undisputed that when Casey presented the check to the Bank on August 17, 1990, there were still insufficient funds in the account. In fact, throughout August 1990, there was never enough money in the account to cover

the check. Casey's attorney notified Karrer by certified mail, return receipt requested, at the address listed on the check, that the check had been drawn on insufficient funds. A review of this notice demonstrates that it complies with the notice guidelines set forth in OCGA § 16-9-20 (a) (2) (A), (B). The notice was returned with the notation "unclaimed" and thus by statute is deemed sufficient and equivalent to having been received by Karrer. See OCGA § 16-9-20 (a) (2) (A). It also is undisputed that Karrer never tendered any money to Casey after said notice was sent. All of the above constitutes prima facie evidence that Karrer knew her check would not be honored. See *Hall v. State*, 244 Ga. 86, 87 (259 SE2d 41) (1979). This prima facie evidence alone amounts to sufficient probable cause to warrant Karrer's arrest, indictment and subsequent prosecution, all of which comprise the damages Karrer complains of here. Consequently, we conclude that the Bank cannot be held accountable for such damages in the case at bar.

Karrer's contention that she told Casey, upon presenting the check to him, that there were insufficient funds in her account to cover the check and that he should not present the check for payment until Karrer could deposit sufficient funds to her account, does not create a genuine issue of material fact in this case. OCGA § 16-9-20 (h) (1) provides in relevant part that "[i]n any civil action for damages which may be brought by the person who made, drew, uttered, executed, or delivered such instrument, *no evidence of statements or representations as to the status of the instrument involved or of any collateral agreement with reference to the instrument shall be admissible unless such statements, representations, or collateral agreement shall be written simultaneously with or upon the instrument at the time it is delivered by the maker thereof.*" (Emphasis supplied.) Id. There is no record evidence of any simultaneously written statements, representations or collateral agreements in this case. The record shows that the check was not even post-dated. Thus, Karrer's contention that she told Casey, at the time she issued him the check, that her account did not have sufficient funds to cover the check, is irrelevant to the case at bar because any such alleged statement is inadmissible. Therefore, such a contention neither creates a genuine issue of material fact to be resolved in this case, nor does it rebut the prima facie evidence of Karrer's knowing issuance of a bad check.

Furthermore, Karrer is precluded from recovery against the Bank in this case because she failed to take any steps to minimize her alleged damages (i.e., her arrest, indictment and subsequent prosecution). Although a bank is liable for damages proximately caused by its wrongful handling of an item, a customer has an obligation to exercise reasonable care to minimize any damage done and if the customer fails to minimize its damages, the customer is precluded from recov-

ery against the bank. See *Donmoyer v. Columbus Bank &c. Co.*, 151 Ga. App. 38 (258 SE2d 725) (1979). In this case Karrer made no effort to minimize her alleged damages. The record shows that the Bank, in its ordinary course of business, sent Karrer a notice of insufficient funds prior to her arrest. The notice advised Karrer that the check had been presented and returned. Additionally, Karrer admits that she received her bank statement for the period of July 24, 1990 through August 20, 1990. This statement also indicates that the check was returned for insufficient funds. Both the notice and the statement were mailed to Karrer's correct address. Moreover, the letter from Casey's attorney notifying Karrer that the check was returned for insufficient funds and demanding payment was also mailed to the correct address, return receipt requested. The record shows that Karrer, either intentionally or through extreme carelessness, disregarded all these mailings. She did not notify the Bank of any problem after receiving her bank statement, even though she admitted seeing the statement prior to her arrest. Karrer also failed to contact Casey and try to make the check good prior to her arrest. Based on the above, we conclude that the trial court was warranted in finding no issue of material fact concerning damages. The damages complained of by Karrer were all directly and solely related to her own admitted carelessness and general lack of fiscal responsibility. The trial court, therefore, did not err in granting summary judgment to the Bank.

2. Karrer also is barred from recovery against the Bank in this case because she failed to meet a condition precedent to bringing suit. The agreement Karrer and her son signed at the time they opened the account contains a provision which requires them to report any account problems to the Bank within 60 days of receipt of their bank statement, or else lose their right to assert the problem against the Bank. Upon review of the record it is clear that Karrer failed to assert any problem she had with the account, relative to the stop-payment order or the return of the check to Casey for insufficient funds, within 60 days of her receipt of her bank statement for the period of July 24, 1990 through August 20, 1990. In fact Karrer did not notify the Bank of any problem she had concerning the stop-payment order or the return of the check until June 4, 1991, approximately ten months after she received the statement indicating that the check had been returned. Accordingly, Karrer has forfeited her right to challenge the Bank's actions with respect to its handling of the check. See *Jamison v. First Ga. Bank*, 193 Ga. App. 219, 220 (387 SE2d 375) (1989).

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED OCTOBER 25, 1994 —
RECONSIDERATION DENIED DECEMBER 16, 1994 —

*William U. Hyden, Jr.*, for appellant.
*Brinson, Askew & Berry, Thomas D. Richardson*, for appellee.