## A02A0142. SECURITY STATE BANK v. VISITING NURSES ASSOCIATION OF TELFAIR COUNTY, INC.
### (568 SE2d 491)

SMITH, Presiding Judge.

We granted the Security State Bank's application for interlocutory appeal of the trial court's denial of its motion for partial summary judgment in an action filed by Visiting Nurses Association of Telfair County, Inc. (VNA). Because we conclude that the bank's motion should have been granted, we reverse.

The record shows that VNA maintained a checking account at the bank. Wanda Williamson was employed as a clerk by VNA, responsible for billing and making bank deposits. Over a four-year period, Williamson embezzled more than $250,000 from VNA by forging VNA's endorsement on checks made payable to VNA or its signature on checks, cashing them at the bank, and keeping a portion of the proceeds, although she was not a signatory on VNA's account. After a Georgia Bureau of Investigation (GBI) investigation, Williamson pled guilty and was sentenced to a prison term and ordered to pay restitution. VNA then brought this suit against the bank, alleging several different theories of recovery, including federal and Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act claims, negligence, breach of contract, and conversion. The bank moved for summary judgment as to the RICO claims on the ground that a total absence of evidence existed that the bank conspired with Williamson. The bank also moved for partial summary judgment on the negligence claims on the ground that VNA was precluded by the time bars in OCGA § 11-4-406 from recovering on checks with forged endorsements, as well as by a bar in the contract itself on the claim for breach of contract. VNA opposed the motion. The trial court denied the entire motion, finding that the bank had "not met its burden in that genuine issues of fact remain to be determined by the jury."

1. The bank correctly points out that the sole factual issue in this case is whether the bank participated in a criminal scheme with Williamson to cash checks fraudulently. In two enumerations, the bank contends the trial court erred in concluding that a genuine issue of fact remained as to this issue. The parties' briefs are largely devoted to arguing about whether the affidavits VNA submitted in support of its opposition to the bank's motion should have been admitted into evidence and whether they are dispositive, or even probative. In those affidavits, two persons state they each heard Williamson say that she conspired with an unnamed bank employee to commit the crimes. The bank argues that these affidavits were untimely, that they were not probative because they were pure hearsay, and that even if admitted they do not serve to rebut the bank's affirmative evi-

dence that no co-conspirator existed: Williamson herself was deposed in prison, and she testified on her deposition that she did not tell anyone she worked with a teller and that all she had said was that a certain teller was the first person to approve one of the forged checks and "[p]eople tried I think to get her caught up in it and, you know, there's nobody at Security Bank that should definitely be tied up because I didn't have a specific person that I went to." The GBI conducted an investigation, and the lead investigative officer stated in his affidavit that the investigation disclosed no co-conspirator. In addition, three bank officers executed affidavits in which they stated that an internal investigation revealed no co-conspirators and no unexplained accounts or funds in the existing accounts of any bank employee. VNA claims its affidavits are admissible under *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982), as a prior inconsistent statement.

We need not decide any of these questions, because even if the affidavits were admissible, probative, and sufficient to rebut the bank's affidavits, VNA could not recover on its RICO claims for a different reason.[1]

VNA alleges that a bank employee conspired with Williamson to defraud it. The bank therefore may only be held liable for a RICO violation under a theory of respondeat superior. The U. S. Court of Appeals for the Eleventh Circuit has held that *"respondeat superior* liability may be applied in the context of 18 USC § 1962 (b) only when an enterprise has derived some benefit from the RICO violation. [Cit.]" *Quick v. Peoples Bank &c.*, 993 F2d 793, 797 (II) (11th Cir. 1993). The Georgia RICO Act follows suit. OCGA § 16-14-2 (b) provides that the Act applies "to an interrelated pattern of criminal activity motivated by or the effect of which is pecuniary gain or economic or physical threat or injury." "[I]t is clear that RICO applies to a pattern of criminal activity where it is directed towards acquiring or maintaining something of pecuniary value." *Sevcech v. Ingles Markets*, 222 Ga. App. 221, 222 (1) (474 SE2d 4) (1996).

The record in this case includes absolutely no evidence that the bank profited from Williamson's crimes; in fact, it is clear that Williamson is the only one who profited. Even if we assume that a bank employee was a co-conspirator, the bank *cashed* the checks; it received no value in return. The funds were not deposited. By cashing the checks, the bank actually caused a potential pecuniary loss to

---

[1] Because the Georgia RICO Act, OCGA §§ 16-14-1 through 16-14-15, is modeled after the federal statute, 18 USC §§ 1961 through 1968, we look to federal authority as to both. *Gentry v. Volkswagen of America*, 238 Ga. App. 785, 791 (4), n. 5 (521 SE2d 13) (1999). Although differences exist, *Chancey v. State*, 256 Ga. 415, 416 (349 SE2d 717) (1986), they are not material here.

itself. VNA therefore cannot prove an essential element necessary for recovery under its RICO claim. When a "plaintiff cannot establish an essential element of his claim, the defendant is entitled to summary judgment." *Sherrill v. Stockel*, 252 Ga. App. 276, 279 (557 SE2d 8) (2001). The trial court should have granted the bank's motion for summary judgment as to this claim.

2. The trial court also erred in not applying the statutory bars of OCGA § 11-4-406 (f) to the facts, limiting VNA's recovery at most to those checks wrongfully cashed within the statutory time periods preceding notice to the bank.

OCGA § 11-4-406 (f) provides:

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within 60 days after the statement or items are made available to the customer . . . discover and report the customer's unauthorized signature on or any alteration on the face of the item or who does not within one year from that time discover and report any unauthorized indorsement or alteration on the back of the item is precluded from asserting against the bank the unauthorized signature, indorsement, or alteration.

The term "unauthorized endorsement" includes a missing endorsement and a forgery. *Trust Co. Bank v. Atlanta IBM Employees Fed. Credit Union*, 245 Ga. 262, 264-265 (264 SE2d 202) (1980). See also OCGA § 11-1-201 (43). It is undisputed that the bank sent VNA a monthly statement during the four-year period that Williamson was fraudulently cashing checks. The bank is therefore entitled to invoke the limitation periods in OCGA § 11-4-406.

VNA argues that these limitation periods do not apply because OCGA § 11-3-405, addressing the effectiveness of an improper endorsement, rather than OCGA § 11-4-406, is the applicable statute. Contrary to VNA's argument, OCGA § 11-3-405 is not applicable here. Article 3 of the Uniform Commercial Code addresses the issue of the negotiability of commercial paper, while Article 4 addresses the relationship between banks and their customers. The trial court should have granted the bank's motion for partial summary judgment on this ground.

3. Similarly, the bank points out that contractual provisions limited the bank's liability. Under OCGA § 11-4-103 (a), a bank and its customer may vary the provisions of Article 4 by contract. See also *Karrer v. Ga. State Bank &c.*, 215 Ga. App. 654, 659 (2) (452 SE2d 120) (1994). In this case, the contract provided for a 14-day time limit to assert an altered or unauthorized signature. It also provides that the bank loses this protection if it did not exercise ordinary care

unless it received no notification within 60 days. The record shows without dispute that more than 60 days passed before the bank was notified as to a majority of the checks. The trial court should have granted the bank's motion for partial summary judgment on this ground as well.

*Judgment reversed. Eldridge and Ellington, JJ., concur.*

DECIDED MAY 21, 2002 —
RECONSIDERATION DENIED JULY 8, 2002 — 

*Straughan & Straughan, Mark W. Straughan,* for appellant.
*William E. Moore, Jr., Saleem D. Dennis,* for appellee.