I am authorized to state that Judge Miller joins in this dissent.

DECIDED MARCH 17, 2004 —
RECONSIDERATION DENIED APRIL 9, 2004 — 

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Sidney R. Barrett, Jr., Senior Assistant Attorney General, James D. Coots, Assistant Attorney General,* for appellant (case no. A03A2244).

*Morris, Manning & Martin, Robert C. Threlkeld,* for appellant (case no. A03A2245).

*Arnall, Golden & Gregory, Charles L. Gregory, Hedy S. Rubinger, Jason E. Bring,* for appellant (case no. A03A2246).

*Nelson, Mullins, Riley & Scarborough, Jeffrey C. Baxter, Jennifer D. Malinovsky, Dillard & Crowley, Terry A. Dillard, Reese & Hopkins, Clyde L. Reese III,* for appellee.

A03A2482. CISTOLA v. DANIEL.
A03A2483. ODEGAARD et al. v. DANIEL.
(598 SE2d 535)

ADAMS, Judge.

Jenifer B. Cistola and John C. and Ellen T. Odegaard appeal from the trial court's judgment ordering the rescission of a quitclaim deed executed by Tom W. Daniel, Jr. in connection with a tract of land in Hall County. Daniel, the named plaintiff in this case,[1] sought rescission of the deed on the ground of fraud and misrepresentation. We affirm.

On April 30, 1974, Daniel's father conveyed a tract of land in Hall County to the Odegaards by warranty deed. On September 4, 1980, Daniel's father conveyed an adjacent tract of land to Leslie W. Buie and Kathryn D. Ekleberry. This tract was subsequently conveyed to Robert K. and Sally L. Woo by warranty deed dated December 17, 1981.

At issue in this lawsuit is the ownership of an approximately 40-foot strip of land that lies between the property originally deeded

---

[1] Daniel originally attempted to assign his fraud claim to Robert and Sally Woo, who initially filed the lawsuit. Daniel was later allowed to intervene in the suit. Subsequently, the trial court granted partial summary judgment to Cistola and the Odegaards as to the Woos' claims, holding that Daniel could not legally assign his fraud claim to them. See OCGA § 44-12-24; *Peoples v. Consolidated Freightways,* 226 Ga. App. 265, 266 (1) (486 SE2d 604) (1997).

to the Odegaards and the property eventually deeded to the Woos. This disputed tract was not included in the description of the land conveyed by Daniel's father to Buie and Ekleberry, which they subsequently sold to the Woos. Nor was the tract included in the numerical metes and bounds description of the property conveyed by Daniel's father to the Odegaards. In fact, the metes and bounds description in the Odegaards' deed describes a landlocked parcel. This anomaly apparently went unnoticed by anyone, including Hall County, until 1999 when the Odegaards decided to sell their land.[2]

When the Odegaards discovered the mix-up, they approached Daniel through their real estate agent, Kelly Moore, to request a corrective quitclaim deed with regard to the land that Daniel's father had conveyed to the Odegaards. The contents of Moore's conversations with Daniel are in dispute, and will be addressed further below. But it is undisputed that following those discussions, on October 19, 1999, Daniel signed a quitclaim deed that had the effect of conveying the disputed tract to the Odegaards.

In 2000, the Odegaards contracted to sell their property, including the disputed tract, to Cistola. During the sales process, Cistola was informed that the Woos' improvements were encroaching upon the disputed tract, and she requested that the Woos be sent a formal request to remove the encroachment. Moore, the Odegaards' real estate agent, testified that prior to the closing on her purchase, Cistola acknowledged reading a letter, which noted this encroachment. Moreover, before the sale closed, Moore told Cistola and the Odegaards that the Woos were claiming ownership of the disputed property. Cistola's purchase of the Odegaard property closed on June 23, 2000.

In the interim, Daniel became aware that a dispute existed regarding the land conveyed in the quitclaim deed. After discussing the matter with the Woos, he recalled that his father had intended to convey the disputed tract to Buie and Ekleberry and that he had not intended to convey it to the Odegaards. On June 2, 2000, Daniel signed an Affidavit Affecting Title, asserting this recollection and claiming that he was fraudulently induced by Moore to sign the quitclaim deed. This affidavit was not filed of record in Hall County until July 7, 2000, approximately two weeks after the Cistola closing and more than eight months after Daniel signed the quitclaim deed.

During the jury trial, additional evidence showed that the Woos resided on their property after they purchased it, with their driveway

---

[2] For example, although the disputed tract apparently remained titled in the name of Daniel's father, the Daniel family never received any tax bills on the property.

and garden lying partly upon the disputed tract. The Woos maintained the disputed tract and added improvements to it because they believed that it was included in the land they purchased from Buie and Ekleberry. Buie had also believed that he owned the land, and he had maintained a garden on it. He believed that he had conveyed this property to the Woos. The Odegaards made no improvements to either the property originally conveyed to them or the disputed tract during their twenty years of ownership, and on at least two occasions, asked the Woos for permission to walk across the disputed property to get to their land. And until 1999, the Odegaards never exerted any ownership over, or questioned, the Woos' ownership over, the disputed tract.

1. Cistola and the Odegaards assert that the trial court erred in denying their motion for directed verdict on Daniel's fraud claim. In reviewing a trial court's denial of a motion for directed verdict, we review and resolve the evidence and any doubts or ambiguities in favor of the verdict. A directed verdict is not appropriate "unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict." (Punctuation and footnote omitted.) *Paul v. Destito*, 250 Ga. App. 631 (550 SE2d 739) (2001).

Here, in order to prove fraud, Daniel was required to demonstrate an intentional false representation or omission of material fact by Moore, designed to induce him to sign the quitclaim deed, upon which he justifiably relied, and which resulted in damage to him. See *State Farm &c. Ins. Co. v. Health Horizons*, 264 Ga. App. 443, 447 (2) (590 SE2d 798) (2003); *Paul v. Destito*, 250 Ga. App. at 635 (1). Cistola and the Odegaards assert that they were entitled to a directed verdict because Daniel failed to establish that he justifiably relied on Moore's statements in signing the quitclaim deed.

Daniel's claim of fraud arises from the telephone conversation in which Moore asked him to sign a corrective quitclaim deed. Daniel testified that Moore called and told him he was representing the Odegaards in the sale of their property and that a mistake had been found in the description on the deed Daniel's father had signed in connection with their land. Daniel is an attorney, and over his years of practice he had seen a number of occasions when errors had been discovered in prior deeds and quitclaim deeds were required to correct the error. Daniel understood that the intent in signing a quitclaim deed under such circumstances was not actually to convey additional property, but merely to correct a descriptive error. He said that Moore never told him that the disputed 40-foot strip had never been conveyed or that his father might have retained an interest in the strip.

Moreover, before agreeing to sign a corrective deed, Daniel asked Moore two questions. First, he asked whether the Odegaards or anyone else had built anything on the property, and Moore replied, "No." Second, he asked whether Moore had discussed the need for the "corrective" deed with the adjoining landowners. Daniel said that Moore told him he had discussed the issue with the Woos, and they were in agreement. Daniel said that the answers to these questions were important. He explained:

> If . . . the adjacent landowners . . . were in agreement with it and nobody had built on it, then it seemed to me to be something that why wouldn't I do it. I mean, it was just the right thing to do to be helpful. If he had relayed to me the real facts, the truth as he knew it to be, I certainly would have done it differently.

Daniel indicated that if he knew something had been built on the property or that the adjoining landowners had not been informed of the issue or that he had an ownership interest in any of the land, he would have investigated the matter further.

Moore testified that before talking to Daniel, he was aware that Daniel appeared to have an interest in the disputed 40-foot strip of land. He also knew at the time of his call to Daniel that the Woos had built a tool shed on the disputed property. Moore testified, however, that he told Daniel about the disputed strip and also told him that a utility shed had been built on an easement on the land.

Cistola and the Odegaards contend that under these facts, Daniel cannot establish that he justifiably relied upon Moore's representations in signing the quitclaim deed. They assert that the evidence showed as a matter of law that Daniel failed to exercise the requisite due diligence in signing the quitclaim deed.

In support of this argument, Cistola and the Odegaards point to a long line of cases involving claims of fraud in the purchase and sale of real estate. These cases hold that a party to such a transaction cannot rely upon the representations of the other party unless he exercises reasonable due diligence to protect his own interests. As our Supreme Court explained in one early decision:

> [I]t is well settled in Georgia that equity will grant no relief in favor of one who buys land, when he fails to exercise any diligence for his protection, and asserts that he blindly relied on the representations of the seller as to matters of which he could have informed himself. . . . So it can not be said that the

purchase originated in fraud so much as in the carelessness of the purchaser to exercise ordinary care for his own interest.

(Citation and punctuation omitted.) *Browning v. Richardson*, 181 Ga. 413, 415 (182 SE 516) (1935). See also, e.g., *Brakebill v. Hicks*, 259 Ga. 849, 852 (388 SE2d 695) (1990); *Crawford v. Williams*, 258 Ga. 806, 807-808 (375 SE2d 223) (1989); *Howard v. McFarland*, 237 Ga. App. 483, 484-485 (1) (515 SE2d 629) (1999); *Fowler v. Overby*, 223 Ga. App. 803, 804-805 (1) (478 SE2d 919) (1996).

But as the trial court correctly observed in denying the defendants' earlier motion for summary judgment on the same ground, this matter does not involve a typical purchase or sale of land and thus is distinguishable from the line of cases upon which Cistola and the Odegaards rely. Daniel was not undertaking to sell or purchase any property. Rather, he testified that Moore requested the quitclaim deed as a mere accommodation to correct a scrivener's error in a deed signed by his father years earlier.

Under these circumstances, Daniel could not be held to the same level of diligence required of a purchasing or selling party in a standard real estate transaction. But our research has disclosed no cases addressing the issues of justifiable reliance or due diligence under similar facts. The evidence here, however, showed that Daniel asked Moore questions to ascertain additional information before agreeing to sign the quitclaim deed. In *Brookshire v. Digby*, 224 Ga. App. 512, 517 (481 SE2d 250) (1997), this Court held that the trial court properly denied a motion for directed verdict on the issue of due diligence when, in addition to inspecting the property, a home buyer asked the seller questions to which he gave "false, deceptive or otherwise reckless" answers. Similarly, we find that whether Daniel's inquiry constituted reasonable diligence under the circumstances of this case was for the jury to decide. See *Ades v. Werther*, 256 Ga. App. 8, 12 (2) (a) (567 SE2d 340) (2002) (justifiable reliance ordinarily a question for the jury).

Cistola and the Odegaards also assert that the trial court should have granted their motion for directed verdict because in the absence of a confidential relationship or any special circumstances in this case, Moore had no duty to inform Daniel that he had an interest in the disputed property. See generally OCGA § 23-2-23. But this argument mischaracterizes Daniel's fraud claim, which does not rely solely upon a failure to disclose. Daniel also based his claim on Moore's alleged misrepresentations in response to his specific questions. Daniel stated that if Moore had told him that there were improvements on the property or that the Woos had not been informed about the mistake in the property description, he would have investigated the matter further. Thus, it was for the jury to determine

whether Moore's answers "defeated [Daniel's] efforts to exercise due diligence" under the circumstances of this case. *Brookshire*, 224 Ga. App. at 517.

2. In a related argument, Cistola and the Odegaards take issue with a portion of the trial court's jury instructions stating that a "defrauded party may justifiably rely where one party's agent's affirmative representations have led the defrauded party to forego inquiry which the defrauded party might otherwise have made." They assert that this charge was not based on Georgia law, but instead came from legal authority in other jurisdictions. They argue that this charge told the jury that "a person lied to can rely on the statements of the liar alone without an independent inquiry."

Although the disputed charge comes from other jurisdictions, it finds at least some support in Georgia law. As noted above, the *Brookshire* court found that a fraud could arise where the defendant's misrepresentations defeated further inquiry or diligence. Id. But even if the charge was error, we find that it was harmless when the jury instructions are considered as a whole. The contested portion of the charge followed earlier instructions outlining the elements of fraud and noting that before a person is entitled to relief on the ground of fraud, "it must appear that person used ordinary care to find out the facts and protect against loss" in the absence of special circumstances or a confidential relationship. And later in the charge, the trial court gave a complete and expanded instruction on the requirement of due diligence.

Thus, even though the disputed portion of the charge may not be as clear or precise as may be desired, when the charge as a whole is considered in the context of the facts and law, the trial court fully informed the jury regarding Daniel's obligation of due diligence and the elements of fraud. "The charge given by the court was adapted to the facts and clearly illuminated the issues presented to the jury for resolution." (Citation omitted.) *Big Bend Agri-Svcs. v. Bank of Meigs*, 174 Ga. App. 493, 495-496 (2) (330 SE2d 422) (1985).

3. Cistola and the Odegaards further contend that they were entitled to a directed verdict on the issue of their defense of estoppel because Daniel did not act promptly to inform Cistola or the Odegaards of his claim of fraud. In making this argument, Cistola and the Odegaards cite OCGA § 51-6-4 (b) which states that "[o]ne who silently stands by and permits another to purchase his property, without disclosing his title, is guilty of such a fraud as estops him from subsequently setting up such title against the purchaser." They assert that Daniel is estopped from asserting fraud because he failed to inform them of his claim until after the closing on Cistola's purchase.

But the record demonstrates that Daniel believed that the Woos were notifying the other parties of his claim. The Woos did, in fact, tell Moore that they claimed the disputed tract. And Moore stated that he told both Cistola and the Odegaards about the Woos' claim before the closing. This evidence raises a question of fact, and the trial court did not err in denying the defendants' motion for directed verdict on the ground of estoppel. See generally *Efstathiou v. Reiss*, 227 Ga. App. 735, 737 (1) (c) (490 SE2d 426) (1997).

4. In addition, Cistola and the Odegaards assert that the trial court erred in denying their motion for directed verdict on the ground that the evidence supported Cistola's defense that she was a bona fide purchaser for value without notice of any adverse claim by Daniel to her title. See generally OCGA §§ 23-1-19; 23-1-20. Cistola asserts that she took title before Daniel filed his "Affidavit Affecting Title" and that he failed to inform her of his claim of fraud before she purchased the property.

The evidence showed that Cistola was aware before she closed on the property that the Woos claimed ownership of the disputed tract. She spoke with Moore and read correspondence outlining the issue. Moreover, she knew that the Woos had built on the tract and also maintained it. But Cistola and the Odegaards argue that this did not put her on notice that Daniel was claiming fraud in the execution of his quitclaim deed, only that the Woos claimed ownership. Moreover, they note that Cistola's attorney called Daniel directly, but before Daniel became aware of the controversy over the disputed tract, to inquire about his interest in the land, and he denied having any interest.

We agree with the trial court that the evidence presented a jury issue on Cistola's defense that she was a bona fide purchaser. Cistola was clearly aware of a dispute regarding the land she intended to purchase, but there was no evidence that she discussed the matter with the Woos or inquired into the basis of their claim of ownership. In the somewhat analogous context of adverse possession, the Supreme Court of Georgia explained that notice of possession can give rise to further inquiry notice of the possessor:

> While the rule, as ordinarily stated, is that possession of land is notice of whatever title or interest therein the possessor has, we think that the real principle applicable in such a case is broader than this. The principle upon which the rule is founded is, that adverse possession of land is notice of whatever facts in reference to the title would be developed by inquiry of the person in possession, the presumption being that inquiry of him will disclose how, or under what right, he holds possession, and therefore lead to the discovery of the

real adverse holder, whether himself or another for whom he holds possession.

*Walker v. Neil*, 117 Ga. 733, 745 (10) (45 SE 387) (1903). Thus, it was for the jury to determine whether the notice given to Cistola prior to the closing was sufficient to defeat Cistola's claim that she was a bona fide purchaser. See generally *Price v. Watts*, 223 Ga. 805, 806 (158 SE2d 406) (1967) (finding evidence sufficient to create jury issue on whether purchaser had notice of unrecorded deed).

5. Cistola and the Odegaards also contend the trial court erred in denying their motion for directed verdict on the ground that Daniel failed to prove the misrepresentations were the proximate cause of his injury. They note that Daniel's conversation with Moore occurred in May 1999, but he did not sign the deed until October 1999. At that time, the deed was sent to him with a cover letter from an attorney enclosing a "Corrective Quitclaim Deed." Daniel had no conversations with Moore at the time he signed the deed, thus they assert that the two events cannot be causally linked to support a finding of proximate cause. We find no merit to this argument. The evidence at trial created a jury issue as to whether Moore's representations to Daniel were the proximate cause of his decision to sign the quitclaim deed.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MARCH 25, 2004 —
RECONSIDERATION DENIED APRIL 9, 2004 — ▮▮▮▮▮▮▮

*Lefkoff, Duncan, Grimes & Miller, John R. Grimes*, for appellant (case no. A03A2482).

*Stewart, Melvin & Frost, Frank Armstrong III*, for appellants (case no. A03A2483).

*King & Spalding, Robert K. Woo, Jr., Hartness & Link, Frederick E. Link*, for appellee.