**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 19, 2013**

# In the Court of Appeals of Georgia

A13A1324. NEBO VENTURES, LLC v. NOVAPRO RISK
   SOLUTIONS, L.P.

ANDREWS, Presiding Judge.

Nebo Ventures, LLC, sued NovaPro Risk Solutions, L.P., to recover damages

for breach of contract and fraud. The trial court granted partial summary judgment to

NovaPro, and Nebo appeals. For reasons set forth below, we affirm in part, reverse

in part, vacate in part, and remand with direction.

It has been "well established that on appeal of a grant of summary judgment,

the appellate court must determine whether the trial court erred in concluding that no

genuine issue of material fact remains and that the party was entitled to judgment as

a matter of law." (Citation and punctuation omitted.) *Rubin v. Cello Corp.*, 235 Ga.

App. 250 (510 SE2d 541) (1998). "We review the grant of summary judgment de

novo, construing the evidence in favor of the nonmovant." (Citation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. 664, 664-665 (595 SE2d 353) (2004).

So viewed, the evidence shows that Nebo, a limited liability company wholly owned and managed by Kevin Miles, helped companies obtain and perform contracts with state and local governments. NovaPro, formerly known as Ward North America, L.P., was in the business of providing third-party administrative services. In 2003, NovaPro retained Nebo to assist it in selling administrative services to potential customers. By the terms of their March 2003 written contract (the "Nebo Services Agreement"), the parties agreed to designate the amount of Nebo's fees in a separate schedule for each potential customer. The Nebo Services Agreement contemplated that NovaPro would not take any action to circumvent the payment of fees to Nebo, including "causing Revenues to be paid to an entity or person other than" NovaPro, "which Revenues shall be deemed paid to" NovaPro.

In a November 2003 addendum to the Nebo Services Agreement, NovaPro and Nebo identified the City of Atlanta as a "Potential Customer." In September 2004, the City contracted with NovaPro (the "2004 City Contract") for the provision of certain workers' compensation, medical, healthcare, and claims management services. Consistent with the terms of the addendum, NovaPro elected to pay Nebo 5% of the

adjusted gross revenues "for the life of its contract with the City of Atlanta." NovaPro began making payments to Nebo, either directly or through Miles,[1] amounts which NovaPro represented to be 5% of its adjusted gross revenues from the 2004 City Contract.

The initial term of the 2004 City Contract was two years, with one two-year renewal option. The City and NovaPro entered into a "City-Contractor Agreement Renewal No. 1" pursuant to which the parties extended the 2004 City Contract for a two-year period beginning on October 1, 2006 and ending on September 20, 2008. After the expiration of the 2004 City Contract, as extended, the City issued a request for proposal, seeking bidders for a new contract for the provision of workers' compensation, medical, healthcare and claims management services. NovaPro won the bid and entered into a professional services agreement (the "2009 City Contract") with the City for an initial three-year term, beginning July 1, 2009. Although NovaPro and the City were operating without a contract for a time, NovaPro performed services and recognized income from the City during that period.

---

[1] In practice, it appears that NovaPro entered into an employment agreement with Miles and paid its obligation to Nebo directly to Miles "via salary, an estimate" of 5% of adjusted gross revenues from the City. NovaPro submitted an employment agreement to Miles to memorialize the arrangement, but Miles never signed that agreement.

Meanwhile, according to Miles, he became aware in 2009 that the City was considering terminating its contractual relationship with NovaPro. Miles e-mailed NovaPro's chief operating officer, Russ Whitmarsh, and asked that NovaPro "consider extending our agreement for 3 years . . . if we are awarded the extensions by [the City of Atlanta] under the 'new' contract." After several e-mail exchanges, NovaPro's officer wrote Miles "I will commit to extending your current agreement if we get the renewal." Whitmarsh also stated that "[t]his I will put in writing" for both parties to execute, but he never did.

NovaPro continued making payments to Nebo after NovaPro and the City entered into the 2009 City Contract. In June 2011, NovaPro sold substantially all of its assets to Carl Warren & Company ("CWC"), including the rights to the 2009 City Contract. NovaPro made its last payment to Nebo in June 2011. After the asset sale to CWC, NovaPro ceased active business operations and did not receive revenues from ongoing business operations, including any revenues from the City.

Nebo believed that NovaPro's sale of the 2009 City Contract to CWC, along with NovaPro's announcement of its intent to stop paying fees under the Nebo Services Agreement, constituted a breach of NovaPro's obligation not to circumvent payment of fees to Nebo. Accordingly, Nebo sued NovaPro. In what Nebo

4

characterizes as its "forward-looking" claims, Nebo alleged that NovaPro was in breach of the Nebo Services Agreement by refusing to pay Nebo 5% of the adjusted gross revenues of the 2009 City Contract. And in its "backward-looking" claims, Nebo alleged that NovaPro had miscalculated the 5% fee in the past and so underpaid Nebo.

Nebo later amended its complaint to assert a fraud claim arising out of allegations that NovaPro had misrepresented and concealed revenues it had received from the City in the form of performance bonuses.[2] During discovery NovaPro initially failed to disclose that it had received approximately $1 million in performance bonuses from the City. In 2004, NovaPro had informed Miles that the City had agreed to pay a yearly performance bonus "based upon how much we can actually save the City each year," and that, if NovaPro actually earned a bonus, Nebo would "of course receive your 5% share of that." When Miles asked Whitmarsh in 2008 or 2009 and NovaPro's chief financial officer, Ken Perilli, as late as 2008, about the bonuses, they each represented that no bonus had been paid. However, during the second quarter of 2005 and the second quarter of 2006, NovaPro received

---

[2] Nebo asserted a corresponding breach of contract claim for NovaPro's failure to pay fees on account of the performance bonuses, but this portion of the amended complaint was expressly not within the scope of order on appeal.

5

performance bonuses from the City of $814,501 and $348,972, respectively. NovaPro's former controller, Antoinette Turbyfill, deposed that the performance bonuses were a component of gross revenue and that she had initially failed to include the bonuses in information she supplied to NovaPro's lawyers.

After Nebo asserted its fraud claim, NovaPro moved for summary judgment. In its resulting order, the trial court found that issues of material fact remained as to whether Nebo had been fully compensated under the Nebo Services Contract and so denied NovaPro's motion as to the "backward-looking" breach of contract claims in part. It also denied summary judgment on Nebo's contractual claims for attorney fees. The trial court, however, granted summary judgment to NovaPro on (i) the fraud claims; (ii) the punitive damages claims; (iii) the "backward-looking" breach of contract claims to the extent that those claims arose outside the statute of limitations, which the trial court found to be six years before this action was filed; and (iv) the "forward-looking" breach of contract claims. Nebo appeals from this order.

1. Nebo contends that the trial court erred in granting NovaPro's motion for summary judgment as to Nebo's fraud claim. We agree.

The elements of fraud are "(1) false representation by defendant; (2) scienter [or knowledge of the alleged falsehood]; (3) intent to induce the plaintiff to act or

6

refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." *Lakeside Investments Group v. Allen*, 253 Ga. App. 448, 450 (559 SE2d 491) (2002). See *Dasher v. Davis*, 274 Ga. App. 788, 789 (618 SE2d 728) (2005) (accord). The absence of one or more of these elements will sustain a grant of summary judgment to the defendant. See *id.* at 790. Nevertheless, "slight circumstances may be sufficient to carry conviction" of the existence of fraud. (Citation omitted.) *Everson v. Franklin Discount Co.*, 248 Ga. 811, 812 (285 SE2d 530) (1982).

Here, the trial court found as a matter of law that Nebo was not justified in relying on NovaPro's representations regarding the nonpayment of the performance bonuses. For the reasons discussed below, we disagree and conclude that the issue should be resolved by a jury. However, virtually every element of Nebo's fraud claim is in dispute, and "a judgment right for any reason will be affirmed on appeal." (Citation and punctuation omitted.) *R. W. Holdco, Inc. v. Johnson*, 267 Ga. App. 859, 866 (2) (b) (601 SE2d 177) (2004). Accordingly, we will address each element of Nebo's fraud claim in turn.

(a) The City paid NovaPro more than $1 million in performance bonuses in 2005 and 2006. Under the terms of the Nebo Services Contract, and as acknowledged

by Perilli, Nebo was entitled to a "5% share" of those monies. According to Miles, in response to his later inquiry about the bonuses, Perilli and Whitmarsh denied that any bonuses had been paid. Viewed in a light most favorable to Nebo, there is evidence that NovaPro made a false statement.

Further, NovaPro's alleged misrepresentation can be distinguished from a mere breach of contract. In Georgia, "a tort action cannot be based on the breach of a contractual duty only, but it can be based on conduct which, in addition to breaching a duty imposed by contract, also breaches a duty imposed by law." (Citations and punctuation omitted.) *Young v. W. S. Badcock Corp.*, 222 Ga. App. 218, 219 (1) (474 SE2d 87) (1996). Georgia law recognizes a right to recover for a "[w]illful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury," OCGA § 51-6-2, and a breach of the duty imposed thereby would afford Nebo a right of action for fraud notwithstanding that NovaPro's nonpayment of fees due on account of the performance bonuses would have also breached the Nebo Services Agreement. See *Young*, 222 Ga. App. at 218 (where plaintiffs asserted defendant defrauded them by, among other things, having "fraudulently misrepresented and withheld the actual amount of accounts receivable plaintiffs were entitled to receive," the complaint set forth a viable tort claim).

8

(b) According to Turbyfill, NovaPro's former controller, both Whitmarsh, who was head of "the performance that would lead to the performance bonus," and Perilli would have known about the performance bonuses. Viewed most favorably to Nebo, there is at least circumstantial evidence from which a trier of fact could conclude that Perilli and Whitmarsh knew that they had made false statements.

(c) By knowingly misleading Nebo about the performance bonuses, NovaPro might expect that Nebo would not take action to further investigate or to recover the sums it was due, to the benefit of NovaPro and the detriment of Nebo. A jury could infer from the circumstances that NovaPro made a knowing misrepresentation with the intent that Nebo rely thereon and so refrain from acting.

(d) Miles deposed that he relied on NovaPro's statements that "we didn't get a bonus" and would have exercised Nebo's right to pursue an audit if he had realized that the statement was a misrepresentation. Thus, there is evidence that Nebo relied on the alleged misrepresentation. However, if the record demonstrates that the plaintiff's reliance on the misrepresentations was not "justifiable," summary judgment for the defendant is appropriate. *Dyer v. Honea*, 252 Ga. App. 735, 740 (3) (b) (557 SE2d 20) (2001). To show justifiable reliance, the plaintiff must establish that he exercised his duty of due diligence. Id. See *Middleton v. Troy Young Realty*, 257 Ga.

9

App. 771, 773 (b) (572 SE2d 334) (2002) (finding that "[f]raud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence.") (citation and punctuation omitted). But other than "in plain and indisputable cases, questions of fraud and whether a plaintiff could have protected himself through the exercise of ordinary diligence are questions for a jury." *Lester v. Bird*, 200 Ga. App. 335, 338 (1) (408 SE2d 147) (1991).

Here, the trial court noted, the Nebo Services Contract afforded Nebo the right to an accounting so that it could confirm or check up on NovaPro's payments. We are unconvinced, however, that Nebo's failure to exercise its right to audit NovaPro establishes such a lack of due diligence that the issue need not be resolved by a jury. Although "a party must exercise reasonable diligence to protect himself against the fraud of another, he is not bound to exhaust all means at his command to ascertain the truth before relying upon the representations." (Citation and punctuation omitted.) *Gaines v. Watts*, 224 Ga. 321, 323 (161 SE2d 830) (1968). Miles was aware that he had the right to an accounting, but deposed that he wanted to avoid being placed "in a combative relationship when you start basically not believing your client," and that "once you start auditing . . . it's a big to-do." In some situations reasonable diligence

10

might nevertheless require such an undertaking. See, e.g., *Dyer v. Honea*, 252 Ga. App. at 738 (1) (reliance on seller's misrepresentations was not reasonable where buyer did not request copies of documents or sought out an accountant to review them). But in this case the alleged misrepresentation was not made in the context of a real estate or other comparable transaction, and the diligence reasonably required of the parties in such cases does not control here. See *Cistola v. Daniel*, 266 Ga. App. 891, 895 (1) (598 SE2d 535) (2004) (fraud claimant "could not be held to the same level of diligence required of a purchasing or selling party in a standard real estate transaction").

NovaPro points out that during a series of e-mails in 2008, Miles wrote to Perilli "about resolving the issue of my un-paid compensation," to which Perilli responded "it does not appear that you are owed any extra compensation." After Miles reminded Perilli that Nebo could hire a CPA firm to audit NovaPro's books, Perilli acknowledged that "[i]f you wish to hire a CPA to do an audit, you are free to do so." NovaPro contends that inasmuch as Nebo declined to conduct an audit following this exchange, the evidence shows that Nebo failed to exercise proper diligence in protecting its interests. However, both the e-mails and Miles's testimony demonstrate that Nebo was concerned with Perilli's apparent calculation of Nebo's

11

compensation based on "profitability on the account." Miles reminded Perilli that the Nebo Services Agreement required that Nebo's compensation be based on 5% of the defined term "Adjusted Gross Revenue." This dispute did not necessarily show that Nebo had reason to doubt NovaPro's representation that it did not receive a performance bonus. We cannot say as a matter of law that reasonable diligence required that, in response to its client's representation as to the nonpayment of the performance bonuses, Nebo protect its interests by auditing NovaPro.

If a jury could conclude that due diligence did not require an audit, the issue remains whether Nebo performed so little diligence that there is no issue of fact as to whether its reliance on NovaPro's alleged misrepresentations was justified. We are unpersuaded by Nebo's argument that a jury could find that Nebo and NovaPro were in a confidential relationship, which carries with it a lessened duty to discover what could have been discovered through ordinary care. See *Howard v. Barron*, 272 Ga. App. 360, 363 (2) (612 SE2d 569) (2005). However, Nebo also shows that Miles asked NovaPro's officers about the performance bonuses on several occasions and that the "alleged misrepresentations [were made] in response to his specific questions." *Cistola*, 266 Ga. App. at 895-896 (1). Thus, a jury might conclude that NovaPro's "answers defeated [Nebo's] efforts to exercise due diligence under the

12

circumstances of this case." (Citation and punctuation omitted.) Id. See *Brookshire v. Digby*, 224 Ga. App. 512, 517 (481 SE2d 250) (1997) (questions about defects were met with false, deceptive, or reckless answers, which defeated efforts to exercise diligence). A jury might also conclude that NovaPro was actively attempting to conceal the payment of bonuses and that further inquiry by Nebo would not have provided information about their payment. See *Northwest Plaza v. Northeast Enterprises*, 305 Ga. App. 182, 190-191 (3) (a) (699 SE2d 410) (2010) (it was for the jury to say whether defendants were attempting to conceal the material information and whether further inquiry would have revealed the information); *Power v. Ga. Exterminators*, 243 Ga. App. 355, 361 (5) (532 SE2d 475) (2000) (finding that "[w]here defects are not obvious, such defects are not discoverable through due diligence"). Accordingly, it is for the jury to determine "whether [Nebo] justifiably relied upon information from [NovaPro]; or whether it should have made some further, independent inquiry." *Northwest Plaza, LLC*, 305 Ga. App. at 191 (3) (a).

(e) To establish fraud, the claimant must also show that it "sustained the alleged loss and damage as the proximate result" of the misrepresentations having been made. (Footnote and punctuation omitted.) *OnBrand Media v. Codex Consulting*, 301 Ga. App. 141, 149 (2) (e) (687 SE2d 168) (2009). A trier of fact

13

could conclude that, but for the misrepresentations, Nebo would have received its share of the performance bonuses. The damages recoverable for the alleged fraud may overlap Nebo's damages for breach of contract, if that action is successful, and Nebo would not be entitled to a double recovery. See, e.g., *UIV Corp. v. Oswald*, 139 Ga. App. 697, 699 (229 SE2d 512) (1976) (plaintiff cannot not "recover twice from the same defendant merely by denominating one action a tort and the other a breach of contract") (citation and punctuation omitted). However, "[a] plaintiff may pursue any number of consistent or inconsistent remedies against the same person or different persons until he shall obtain a satisfaction from some of them," OCGA § 9-2-4, and any election of remedies, if necessary, could be made before judgment. See *UIV Corp.*, 139 Ga. App. at 699.

In light of the foregoing, material issues of fact remain for the trier of fact. We find, therefore, that the trial court erred in granting summary judgment to NovaPro on Nebo's fraud claim.

2. The trial court granted summary judgment to NovaPro on Nebo's punitive damages claims because it concluded that Nebo's fraud claim had failed. Because the fraud claim remains viable, the punitive damages claim also remains outstanding. See, e.g., *Esprit Log & Timber Frame Homes v. Wilcox*, 302 Ga. App. 550, 553-554 (1),

14

(2) (691 SE2d 344) (2010) (affirming damage award for breach of contract as well as jury's award of punitive damages for contract-related fraud); *Clark v. Aenchbacher*, 143 Ga. App. 282, 284 (1) (238 SE2d 442) (1977) (finding that "[e]ven in an action for breach of contract, where there were matters of record relating to fraud, punitive damages can be awarded, for fraud, if found, is tortious conduct") (citation and punctuation omitted).

3. Nebo also contends that the trial court erred in granting partial summary judgment as to its "backward-looking" breach of contract claims to the extent those claims arose outside of the six-year statute of limitation. We disagree.

We preface our analysis by noting that the trial court expressly found that NovaPro's motion for summary judgment did not encompass Nebo's claim that NovaPro breached the Nebo Services Agreement by failing to pay Nebo 5% of the performance bonuses paid by the City to NovaPro. Thus, the trial court did not address whether this breach of contract claim, in whole or in part, was barred by the statute of limitation. Further, Nebo fails to show that it was in a confidential relationship with NovaPro giving rise to a duty to disclose or that, setting aside the representations regarding the performance bonuses, the City made an affirmative misrepresentation that might toll the limitation period. Compare *Perkins v. Aetna Cas.*

15

*&c. Co.*, 147 Ga. App. 662, 664 (4) (249 SE2d 661) (1978) (employer's "clearcut affirmative misrepresentations" regarding availability of workers' compensation constituted fraud that tolled statute of limitation).

In light of the foregoing, Nebo's claim of error necessarily fails. The statute of limitation for actions on written contracts is six years. See OCGA § 9-3-24; *Cotton States Mut. Ins. Co. v. Atkinson*, 120 Ga. App. 695, 697 (172 SE2d 188) (1969). The statute begins to run at the time of breach, not the time the damages result or are discovered. See *Hamburger v. PFM Capital Mgmt.*, 286 Ga. App. 382, 385 (1) (649 SE2d 779) (2007); *Gamble v. The Lovett School*, 180 Ga. App. 708, 710 (350 SE2d 311) (1986). In this case, the complaint was filed on July 1, 2011, and so Nebo's "backward-looking" claims that NovaPro breached the Nebo Services Contract by underpaying Nebo,[3] to the extent those claims arose before July 1, 2005, are time-barred.

4. At issue in Nebo's "forward-looking" breach of contract claims is whether NovaPro breached the Nebo Services Agreement following the sale of NovaPro's assets to CWC. The trial court granted summary judgment to NovaPro because it

---

[3] Excepting the amended claim for NovaPro's alleged failure to pay the fees associated with the performance bonuses, about which the trial court did not rule, and we express no opinion.

16

found that the 2009 City Contract was not a "renewal" of the 2004 City Contract and that it followed that Nebo was not entitled to any revenues derived from the 2009 City Contract. Nebo claims that this was error. We disagree. However, we conclude that we must nevertheless remand for the trial court to consider whether the parties entered into an enforceable agreement to extend the term of the Nebo Services Agreement.

> In construing contracts, courts apply a three step process:

> At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

(Citation and punctuation omitted.) *Chaudhuri v. Fannin Regional Hosp.*, 317 Ga. App. 184, 184-185 (1) (730 SE2d 425) (2012). "Ambiguity exists where the words used in the contract leave the intent of the parties in question." (Citation and punctuation omitted) *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 106 (1)

17

(661 SE2d 578) (2008). On the other hand, "no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation." (Citation and punctuation omitted.) Id.

The stated termination date of the Nebo Services Agreement is "April 31[sic], 2008." Notwithstanding its termination, the agreement provides that "Nebo shall be entitled to Fees for any Potential Customers who have previously entered into a contract with [NovaPro] for Subject Services, or who enter into such a contract within one year of Termination." Thus, NovaPro's obligations to Nebo under the Nebo Services Agreement did not necessarily end with that contract's termination date.

As we noted previously, by separate addendum the parties designated the City as a "Potential Customer." And "Subject Services" are defined as "third party administrative services in the area of insurance." The "Fees" referred to in the termination provision is also a defined term. Nebo is entitled to "Fees" for the "'adjusted gross revenues' earned by [NovaPro] for providing Subject Services to potential customers who have entered into contracts with [NovaPro] during the" term of the Nebo Services Agreement or within a year thereafter. In turn,

18

"Adjusted gross revenues" is defined as: gross revenue, less [certain revenues and expenses] and shall be applicable for the life of any such contracts and extensions or renewals thereto, provided however that any such extensions or renewal becomes effective with[in][4] one year from the date which such prior contract, renewal or extension has expired.

Reading these provisions as a whole, the fact that the City and NovaPro entered into the 2004 City Contract does not, in and of itself, entitle Nebo to a portion of revenues generated by any administrative services contract thereafter entered into between to the City and NovaPro. And inasmuch as the 2009 City Contract was entered into more than one year after the stated termination date of the Nebo Services Agreement, it follows that, absent an agreement of the parties to extend the termination date of the Nebo Services Agreement, the 2009 City Contract does not independently give rise to any obligation by NovaPro to pay fees to Nebo. Rather, because the City and NovaPro entered into the 2004 City Contract before the termination (or one year thereafter) of the Nebo Services Agreement, Nebo is entitled to a percentage of Adjusted Gross Revenues on account of the 2004 City Contract and any extensions or renewals thereof, and that obligation would continue whether or not

---

[4] The parties agree that the word "without," which appears in the document, is a typographical error and should be "within."

19

the Nebo Services Agreement otherwise terminated. The pertinent question then becomes whether the 2009 City Contract is an extension or renewal of the 2004 City Contract.

Neither "extension" or "renewal" is defined by the Nebo Services Agreement. But there is little question that the 2009 City Contract, which encompasses almost 200 pages and does not simply incorporate the provisions of the 2004 City Contract, is not an extension. An extension is "intended merely to lengthen the time upon terms and conditions stated," and "does not contemplate a new agreement." *Powell v. Norman Elec. Galaxy*, 229 Ga. App. 99, 100 (1) (493 SE2d 205) (1997).

What the parties intended by a "renewal" and whether that term applies to the 2009 City Contract is a more difficult question. A renewal may be generally defined as "the re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." *Livoti v. Aycock*, 263 Ga. App. 897, 903 (2) (590 SE2d 159) (2003) (quoting Black's Law Dictionary (7th ed. 1999)). But the foregoing definition is somewhat broader than the term has been applied by the Georgia courts, as we have found that a "renewal" is not any new contract, but "another contract that continues the same obligation." Id. See generally *Lowry Nat. Bank v. Fickett*, 122 Ga. 489, 492

(50 SE 396) (1905) (finding that "an obligation is renewed when the same obligation is carried forward by the new paper or undertaking, whatever it may be.").

For example, in the context of leases, differentiating between a renewal of a preceding lease and an altogether new lease

> can be based on whether the succeeding lease employs drastically different terms, not simply somewhat different considerations, i.e., is the lessee occupying substantially the same space under substantially the same terms? If the succeeding lease employs substantially the same terms as the preceeding lease, it may be considered a renewal even though technically a "new" lease.

*Bd. of Regents v. A. B. & E.*, 182 Ga. App. 671, 674 (357 SE2d 100) (1987). See *Brannen/Goddard Co. v. Sheffield, Inc.*, 240 Ga. App. 667, 669 (524 SE2d 534) (1999) (accord). We find *A. B. & E.* and *Brannen/Goddard* persuasive because, among other things, those decisions involved claims for unpaid commissions and are analogous to Nebo's action in this case to recover fees derived from a separate contract between its client and a third party. Viewing the contract as a whole and affording its terms their usual and ordinary meaning, we conclude that the Nebo Services Agreement is not ambiguous. The parties contemplated that a new agreement

21

between the City and NovaPro would be considered a "renewal" if such agreement encompassed substantially the same obligations as the 2004 City Contract.

The trial court found that the 2009 City Contract was not a renewal of the 2004 City Contract because the two agreements provided for substantially different obligations, and we agree. The 2004 City Contract required NovaPro to provide the City with six services[5] and the 2009 City Contract required NovaPro to provide three.[6] The 2004 City Contract and 2009 City Contract also identified different subcontractors and affiliates through which services could be provided. A comparison of the two agreements shows that the contractual language describing the scope of services is completely different. Further, the 2009 City Contract was entered into as a result of the City's request for proposal. See, e.g., *Brannen/Goddard*, 240 Ga. App. at 670 (where, among other things, lessee negotiated an entirely different lease, the new lease was not a renewal of the old lease).

---

[5] The scope of services under the 2004 City Contract provide for "Workers Compensation Claims Management . . . , Litigation Management, Risk Management Information Systems/Reporting, Medical Cost Containment Services, Subsequent Injury Trust Fund Management, and Subrogation."

[6] The scope of services under the 2009 City Contract are "Third Party Administration of Workers' Compensation claims," "Management of Healthcare," and "Management of Workers' Compensation-related litigation."

22

We find Nebo's arguments that the 2009 City Contract was a renewal of the 2004 City Contract to be unpersuasive. Nebo points out that Miles deposed that the City's request for proposal "was for the exact same services that NovaPro was already providing." Miles's statement appears to be a sweeping assertion that does nothing to explain the differences between the 2004 City Contract and the 2009 City Contract. Nebo also points to evidence that NovaPro continued to pay Nebo, or Miles on Nebo's behalf, a percentage of revenues on account of monies received from the City after the inception of the 2009 City Contract, and that it made those payments until 2011. In some circumstances, "[t]he construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them." *Scruggs v. Purvis*, 218 Ga. 40, 42 (126 SE2d 208) (1962). However, Nebo fails to show that the parties construed the Nebo Services Agreement as requiring such payments beyond its termination. According to Miles's affidavit, it was only "upon reflection," i.e., after the fact, that he came to believe that it was not necessary to extend the Nebo Services Agreement for Nebo to continue to receive the fees. Compare *Anderson v. Anderson*, 274 Ga. 224, 226 (552 SE2d 801) (2001) (recognizing principle that the parties' interpretation is of great influence, particularly if it is made before any controversy arises).

23

Although we agree with the trial court's finding that the 2009 City Contract was not a renewal of the 2004 City Contract within the meaning of the Nebo Services Agreement, it does not follow that NovaPro was entitled to summary judgment on its "forward-looking" breach of contract claims. Miles averred that the parties reached a final agreement to extend the term of the Nebo Services Agreement for three years. If the term of the Nebo Services Agreement was extended, then the 2009 City Contract, even if not a "renewal" of the 2004 City Contract, would appear to be an administrative services contract between NovaPro and a "Potential Customer" entered into within the term of Nebo Services Agreement (or one year thereafter) and so subject to its fee provisions and related warranties. Although minimally briefed, the parties dispute whether they reached a meeting of the minds on the essential terms of an agreement to extend the term of the Nebo Services Agreement, or only an unenforceable "agreement to agree," and whether the statute of frauds rendered an oral agreement unenforceable notwithstanding, as Nebo asserts, its part performance thereunder.[7] Although the issue of an extension to the Nebo Services Agreement was

---

[7] Nebo, pointing to statements by NovaPro as to an "April 2009" expiration date, also suggests, it appears, that the parties initially extended the term of the Nebo Services Agreement to coincide with the expiration of Miles's employment agreement.

24

raised below by the evidence and by NovaPro's arguments in support of its motion for summary judgment, the trial court did not address the matter in its summary judgment order. Thus, if we were to conclude that the trial court erred, it would be on account of an issue never ruled on below. See *City of Gainesville v. Dodd*, 275 Ga. 834, 837 (573 SE2d 369) (2002) (noting principle that "[t]here having been no rulings by the trial court on the issues raised on appeal, there are no rulings to review for legal error") (citation and punctuation omitted). As we have said, "although an appellate court sometimes can review a record for purposes of summary judgment as effectively as a trial court and determine that the ruling under review was right for some reason other than the reason given by the court below, we do not think an appellate court properly ought to consider whether the trial court was 'wrong for any reason.'" (Citation and punctuation omitted.) *Strength v. Lovett*, 311 Ga. App. 35, 44 (2) (b) (714 SE2d 723) (2011). Accordingly, we conclude that it is appropriate for the trial court to address in the first instance whether triable issues of fact remain on the question of whether the parties entered into an enforceable extension of the Nebo Services Agreement, and, if so, whether NovaPro is entitled to summary judgment on Nebo's "forward-looking" breach of contract claims. See id. We therefore vacate the

grant of summary judgment as to the "forward-looking" breach of contract claims and remand for the trial court to address the issue.

In sum, we reverse the grant of summary judgment to NovaPro on Nebo's fraud claims and punitive damage claims. We affirm the grant of partial summary judgment on the "backward-looking" breach of contract claims. We vacate the trial court's order granting summary judgment to NovaPro on Nebo's "forward-looking" breach of contract claims, and remand the case with direction.

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded with direction. Dillard and McMillian, JJ., concur.*