A09A1714. VADDE v. BANK OF AMERICA.
(687 SE2d 880)

MIKELL, Judge.

Subbamma Vadde appeals pro se from the grant of summary judgment to Bank of America concerning her indebtedness under a bank account agreement. For the reasons set forth below, we affirm.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most

---

favorable to the nonmoving party, warrant judgment as a matter of law."[1]

> On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[2]

So viewed, the evidence shows that on January 18, 2001, Vadde opened a regular checking account with Bank of America. When she opened the account, she signed a Personal Signature Card that bound her to the terms and conditions of the Deposit Agreement and Disclosures statement. The relevant portion of the Agreement provides as follows:

> Credit for items deposited is provisional and subject to revocation if the item is not paid for any reason. . . . If a deposited item is returned to us by the bank on which it was drawn, we may accept that return and charge the item back against your account without regard to whether the bank returned the item before its midnight deadline. At our option, and without notice to you that the item has been returned, we may resubmit any returned item for payment. You waive notice of dishonor and protest, and agree that we will have no obligation to notify you of any deposited item that is returned to us. . . . [W]e also reserve the right to charge back to your account the amount of any item deposited to your account or cashed for you which was initially paid by the payor bank and which is later returned to us due to an allegedly forged, unauthorized or missing endorsement, claim of alteration, encoding error or other problem which on our judgment justifies reversal of credit. . . . We are not obligated to pay an item presented if your account does not contain sufficient collected funds, but we may pay it at our option and charge you a fee. In addition, if payment is not received for any deposited item, the amount of the item will be charged back to your account

---

[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). With regard to Vadde's objection to the trial court's reliance on *Lau's Corp.* in its order granting summary judgment to Bank of America, we note that this Court and many lower courts cite to *Lau's Corp.* because it established the standard for granting summary judgment to a movant.

[2] (Citations omitted.) *Youngblood v. Gwinnett &c. Svc. Bd.*, 273 Ga. 715, 717-718 (4) (545 SE2d 875) (2001).

and may create an overdraft, for which we will charge you a fee.

On June 14, 2004, Vadde deposited a check for 35,000 Euros (40,705 U. S. Dollars), drawn on the Ulster, Ireland bank account of "An Post Employees Credit Union LTD." The check was made payable to Vadde's husband, Srinivas Vadde, and also included his endorsement. Vadde's husband averred that he received the check from "Chief Joseph Sanusi, the then Governor of the Central Bank of Nigeria, for reimbursement of expenses and his capital while doing business with him and his government." According to Srinivas, the Nigerian government routinely uses foreign banks to pay their foreign contractors because Nigeria does not have an advanced banking system of its own. Sanusi assured Srinivas that the check was genuine, valid, and authentic.

Between June 16, 2004, and July 8, 2004, Vadde wrote checks, made cash withdrawals, and transferred all funds in excess of the deposit, including a $35,000 online transfer to her savings account, $23,000 of which she then wired to various money market accounts, naming Srinivas Vadde as the beneficiary. Vadde also wrote checks to herself totaling $13,000. On July 8, 2004, the check was dishonored by the Ulster bank and returned to Bank of America. On that same date, Bank of America charged back the item to Vadde's account and sent her an advice of debit notice, indicating that the amount of $43,397.50 had been returned due to fraud. As a result of the chargeback, Vadde's account was overdrawn in the amount of $42,200.96. On April 7, 2006, Bank of America sued Vadde for this amount plus interest. Vadde filed an answer and counterclaim, alleging that Bank of America was indebted to her for the amount of the check plus costs, for a total damage claim of approximately $344,876.54. Vadde also sought dismissal of the complaint and an award of summary judgment on her counterclaim. The trial court granted Bank of America's motion for summary judgment, denied Vadde's motion for summary judgment, and dismissed her counterclaim with prejudice.[3]

---

[3] In its motion for summary judgment, Bank of America noted that Vadde may have been a victim, knowingly or unknowingly, of a Nigerian check scheme, similar to a 419 advance fee scam (the numbers "419" refer to the section of the Nigerian penal code addressing such fraudulent schemes). The scheme begins when a person is contacted by e-mail and advised that if she endorses and deposits a foreign check into her checking account and then wires funds to another individual, the depositor may keep a portion of the funds from the check for herself. After the victim acts as instructed, the bank notifies her that she has passed a counterfeit check. At this point, the victim already has wired funds from her account, and is liable for the overage. These schemes are widely documented on the internet. See http://en.wikipedia.org/wiki/

1. In related enumerations of error, Vadde challenges several evidentiary and discovery rulings by the trial court. We find no error.

(a) Vadde contends that the trial court should have granted her motions in limine to "exclude prejudicial hearsay information." Vadde does not specify the hearsay information in her enumeration of error and after listing a string of citations, argues that further justification for this enumeration of error is given in her rebuttal to Bank of America's response to her motions in limine. Vadde's failure to provide any cogent argument or citation of authority in support of this alleged error constitutes a waiver.[4] Even if the argument had not been waived, it is meritless. "A trial court's ruling on a motion in limine is reviewed for abuse of discretion."[5] To the extent Vadde is challenging the admission of Crystal Frierson's affidavit, filed in support of Bank of America's motion for summary judgment, her challenge fails. The affidavit was admissible under OCGA § 24-3-14, which provides:

> Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.[6]

This Code section is to be liberally interpreted and applied.[7] In this case, Frierson averred that she is the custodian of records for Bank of America and that the records filed in conjunction with her affidavit are "maintained in the regular and ordinary course of business and that the transactions that appear in the record are recorded contemporaneously with the events as they occur." Accordingly, the affidavit was admissible and the trial court did not abuse its discretion in failing to grant Vadde's motions in limine.[8]

---

Advance-fee_fraud; http://www.snopes.com/crime/fraud/nigeria.asp; http://nigeria.usembassy.gov/scam419.html.

[4] *Hicks v. Newman*, 283 Ga. App. 352, 353 (641 SE2d 589) (2007).

[5] (Citation and punctuation omitted.) *Biederbeck v. Marbut*, 294 Ga. App. 799, 804 (4) (670 SE2d 483) (2008).

[6] OCGA § 24-3-14 (b).

[7] OCGA § 24-3-14 (d). See also *Hertz Corp. v. McCray*, 198 Ga. App. 484, 485 (2) (402 SE2d 298) (1991) ("[a] witness identifying business records under OCGA § 24-3-14 does not have to have personal knowledge of the correctness of the records or have made the entry [herself]") (citations omitted).

[8] See, e.g., *Davis v. Harpagon Co.*, 283 Ga. 539, 541 (2) (661 SE2d 545) (2008).

(b) Vadde contends that the trial court should have granted her motion to compel discovery and motion for sanctions. Vadde argues that Bank of America failed to respond completely to her first interrogatories; gave evasive, false, and self-contradictory answers to her first request for admissions; and failed to respond to her second interrogatories and requests for admission. Vadde does not specify what information she sought from Bank of America or what may have been established by its responses; rather, Vadde again argues that compelling arguments are given in her motion for sanctions and related rebuttals.

"Trial courts have broad discretion to control discovery, including the imposition of sanctions, and will not be reversed in the absence of a clear abuse of discretion."[9] "Also, to prevail on appeal, [Vadde] must show that the alleged error was harmful."[10] Because Vadde has failed to allege or demonstrate any harm caused by the trial court's decision, we find this enumeration of error to be without merit.

(c) Vadde next contends that the trial court erred in denying her motion to record all proceedings and her request for waiver of motions hearing. According to Vadde, neither party requested a hearing on Bank of America's motion for summary judgment and the trial court erred in ordering both parties to appear when it could have ruled on the briefs.

Uniform Superior Court Rule 6.3 provides:

> ... [O]ral argument on a motion for summary judgment shall be permitted upon written request made in a separate pleading bearing the caption of the case and entitled "Request for Oral Hearing,". . . provided that such pleading is filed with the motion for summary judgment or filed not later than five (5) days after the time for response.

"Under this rule, whether oral argument is heard is within the power of the parties, and is not left to the discretion of the trial court. All a party need do is make a written request for oral argument and it shall be held."[11] "[A] court's error in failing to grant a hearing can never be held harmless."[12] While Vadde is correct that a trial court may decide a motion for summary judgment without oral argu-

---

[9] (Citation omitted.) *Garner v. Roberts*, 238 Ga. App. 738, 740 (1) (520 SE2d 255) (1999).

[10] (Citation omitted.) *Brown v. Brewer*, 237 Ga. App. 145, 148 (3) (513 SE2d 10) (1999).

[11] (Citation and punctuation omitted.) *Southern Empire Homes v. Ognio Grading*, 277 Ga. App. 215, 216 (626 SE2d 173) (2006).

[12] (Footnote omitted.) *Hunt v. Thomas*, 296 Ga. App. 505, 506 (1) (675 SE2d 256) (2009).

ment,[13] Vadde cites no authority that prohibits a trial court from scheduling a hearing on a motion for summary judgment even though one has not been requested. Accordingly, the trial court did not err in denying Vadde's request for waiver of motions hearing.

Additionally,

> [w]hile OCGA § 5-6-41 (j) provides that any party in a civil case may, as a matter of right, have a case reported at his expense, it is not incumbent upon the trial judge to arrange for the official reporter to take down the evidence at such a hearing. Moreover, the law does not mandate that every civil case be reported.[14]

Vadde had notice of the hearing and could have arranged for a court reporter to be present at this hearing. The trial court advised Vadde that a court reporter was available, but Vadde presumably chose not to avail herself of the transcription service. The trial court did not err in denying Vadde's motion to record all proceedings.

2. In other related enumerations of error, Vadde contends that the trial court erred in denying her motion to dismiss and motion for judgment on the pleadings, and in granting summary judgment to Bank of America. In support of this challenge, Vadde contends that (1) she did not know that the check would be dishonored at the time it was written; (2) she believes the check is "honorable to the best of her personal knowledge"; (3) Bank of America honored the check on the date it was deposited; (4) there is no evidence that the check was ever presented to the Ulster bank or that the Ulster bank dishonored the check; and (5) the trial court's ruling rests "on the presumption that checks can be dishonored at the subjective whims and dictates of people lawlessly, and without reason." Vadde contends that Bank of America's failure to honor the check was based on "unjustified speculation and inadmissible hearsay without any valid reason or tangible evidence." Vadde also contends that she is entitled to summary judgment because Bank of America violated the UCC's rules governing bank deposits and collections, OCGA § 11-4-101 et seq., in that it failed to notify her of a problem with the check by midnight of June 14, 2004, and has not presented any evidence proving that it mailed the Advice of Debit on July 9, 2004; thus, Bank of America is indebted to her for the amount of the check. Vadde is mistaken.

---

[13] *Val Preda Motors v. National Uniform Svc.*, 195 Ga. App. 443, 444 (3) (393 SE2d 728) (1990).

[14] (Citation and punctuation omitted.) *Quarterman v. Weiss*, 212 Ga. App. 563 (1) (442 SE2d 813) (1994).

YALE LAW LIBRARY

"The UCC permits parties to a contract of deposit to agree between themselves as to their duties and the legal consequences which flow therefrom. An account agreement is controlling unless it is manifestly unreasonable."[15] In this case, the provisional clause of the Deposit Agreement and Disclosures statement was not unreasonable and allowed Bank of America to charge back the amount of the check at issue to Vadde's account upon its return from the Ulster bank as fraudulent.

Moreover, Bank of America's actions complied with the UCC. Under OCGA § 11-4-214 (a),

> [i]f a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension of payments by a bank, or otherwise to receive settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account, or obtain refund from its customer, whether or not it is able to return the item, if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. If the return or notice is delayed beyond the bank's midnight deadline or a longer reasonable time after it learns the facts, the bank may revoke the settlement, charge back the credit, or obtain refund from its customer, but it is liable for any loss resulting from the delay. These rights to revoke, charge back, and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final.

Under the UCC, Bank of America was the "collecting bank" for the check at issue, and, therefore, was Vadde's agent for the collection of the check until "final settlement" was made, i.e., until the check ultimately was paid by the payor bank (here, the Ulster bank).[16] In the meantime, under OCGA § 11-4-201 (a), the risk of noncollection

---

[15] (Citations and punctuation omitted.) *Freese v. Regions Bank, N.A.*, 284 Ga. App. 717, 720-721 (644 SE2d 549) (2007). See OCGA § 11-4-103 (a). The official comments to UCC § 4-103 provide:

> Subsection (a) confers blanket power to vary all provisions of the Article by agreements of the ordinary kind. The agreements may not disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care and may not limit the measure of damages for the lack or failure, but this subsection like Section 1-102 (3) approves the practice of parties determining by agreement the standards by which the responsibility is to be measured. In the absence of a showing that the standards manifestly are unreasonable, the agreement controls.

[16] OCGA §§ 11-4-105 (3), (5); 11-4-201 (a). See *First Nat. Bank of St. Paul v. Trust Co. of Cobb County*, 510 FSupp. 651, 654 (N.D. Ga. 1981).

remained with Vadde and any settlement made on the check by Bank of America was provisional only. Accordingly, when the payor bank discovered the fraud, and refused to make a final settlement on the check, Bank of America was authorized to revoke the provisional settlement made on the check and charge back Vadde's account.[17]

Vadde contends that "OCGA § 11-4-214 . . . is superseded by . . . OCGA §§ 11-4-301, and/or 11-4-302 . . . , since charge back of an honored check is barred by a subsequent wrongful dishonor without giving a timely notice of dishonor." Vadde is wrong. OCGA §§ 11-4-301 and 11-4-302 apply to the payor bank, not the collecting bank.[18] Moreover, as discussed above, Bank of America's actions were permissible under the terms of the Deposit Agreement and Disclosures statement signed and agreed to by Vadde, as well as OCGA § 11-4-214. Additionally, Bank of America's evidence demonstrates that it notified Vadde that the check had been "returned due to fraud" on July 8, 2004, the same date it received notification from the payor bank that the check was counterfeit. OCGA § 11-4-202 provides as follows:

> (a) A collecting bank must exercise ordinary care in: (1) Presenting an item or sending it for presentment; (2) Sending notice of dishonor or nonpayment or returning an item other than a documentary draft to the bank's transferor after learning that the item has not been paid or accepted, as the case may be; [and] (3) Settling for an item when the bank receives final settlement. . . .
>
> (b) A collecting bank exercises ordinary care under subsection (a) of this Code section by taking proper action before its midnight deadline following receipt of an item, notice, or settlement. Taking proper action within a reasonably longer time may constitute the exercise of ordinary care, but the bank has the burden of establishing timeliness.[19]

WHITE LAW LIBRARY

---

[17] See *First Ga. Bank v. Webster*, 168 Ga. App. 307, 309 (2) (308 SE2d 579) (1983) (decided under former OCGA § 11-4-212).

[18] Vadde contends that Bank of America is a depositary bank or payor bank. While Bank of America is a payor bank in certain transactions, in this particular transaction, Bank of America was a collecting bank. See OCGA § 11-4-105 (2), (3) and (5), which provide:
 (2) "Depositary bank" means the first bank to take an item even though it is also the payor bank, unless the item is presented for immediate payment over the counter;
 (3) "Payor bank" means a bank that is the drawee of a draft; . . .
 (5) "Collecting bank" means a bank handling an item for collection except the payor bank.

[19] Compare *Clements v. Central Bank of Ga.*, 155 Ga. App. 27, 29-31 (1) (270 SE2d 194) (1980) (delay in notification unreasonable as a matter of law where payor bank notified

Bank of America demonstrated that it satisfied this Code section. The only evidence in the record that such a notice was not sent is Vadde's self-serving statements, which are insufficient to raise a genuine issue of material fact.[20]

We also reject Vadde's claims that Bank of America is not entitled to summary judgment because she did not know that the check was counterfeit at the time she deposited it and to the best of her knowledge the check is genuine and authentic. First, Vadde cites no authority, and our research reveals none, holding that ignorance of a fraud or counterfeit is a defense to a collecting bank's claim for recoupment. Second, when Vadde signed the Deposit Agreement and Disclosures statement, she expressly agreed that "[c]redit for items is provisional and subject to revocation if the item is not paid for *any reason.*" Third, Sanusi's statements to Srivinas Vadde assuring him that the check was genuine, authentic, and valid is impermissible hearsay and cannot be considered in a summary judgment proceeding.[21]

As for Vadde's claims that the Bank dishonored the check based on a whim, there is no evidence in the record to support this assertion, except for Vadde's self-serving averments that the check was a legitimate check given to her husband by a supposed prominent Nigerian banker.[22]

The bottom line is that the money was never Vadde's to spend. Mr. Sanusi, a supposed trusted friend and well-respected international banker, issued to Vadde's husband an invalid, fraudulent, and counterfeit check, which Bank of America properly and timely dishonored as provided by the UCC and according to its contract with Vadde. As a matter of law, the trial court did not err in granting summary judgment to Bank of America, in denying summary judgment to Vadde, and in dismissing Vadde's counterclaim with prejudice.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 20, 2009 —
RECONSIDERATION DENIED DECEMBER 9, 2009 — 

---

collecting bank of nonacceptance on September 29, and collecting bank waited more than one month to notify endorser of check).

[20] *Jones v. Bank of America Mtg.*, 254 Ga. App. 217, 219 (1) (561 SE2d 867) (2002) (where plaintiff/bank's records conclusively demonstrated default, defendant's self-serving, conclusory affidavit stating that he was not in default was not supported by fact or circumstances, and, therefore, was insufficient to raise a genuine issue of material fact).

[21] See *White Missionary Baptist Church v. Trustees of First Baptist Church*, 268 Ga. 668, 669 (1) (492 SE2d 661) (1997).

[22] *Jones*, supra.

Subbamma Vadde, *pro se*.

*Trauner, Cohen & Thomas, Michael J. Cohen, Craig R. Goodman*, for appellee.