**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 1, 2018**

# In the Court of Appeals of Georgia

A18A0132, A18A0134. AUTO-OWNERS INSURANCE COMPANY v. HALE HAVEN PROPERTIES, LLC; and vice versa.
A18A0133. BANK OF AMERICA N.A. et al v. HALE HAVEN PROPERTIES, LLC, et al.
A18A0147. HALE HAVEN PROPERTIES, LLC v. BANK OF AMERICA, N.A. et al.

MILLER, Presiding Judge.

These four related appeals stem from a lawsuit filed by Hale Haven Properties, LLC, against Auto-Owners Insurance Company, Bank of America, N.A., and Regions Bank, Inc. (Bank of America and Regions Bank are collectively, the "Bank Appellants"), to recover payment on an insurance claim for damage to commercial property.

In the first two cases, A18A0132 and A18A0134, Auto-Owners appeals from the trial court's denial of its motion for summary judgment on Hale Haven's claims

for breach of contract, reformation, enforcement of the check, bad faith, and attorney fees, and Hale Haven cross-appeals from the trial court's denial of its summary judgment motion against Auto-Owners. As it pertains to Auto-Owners' appeal, we conclude that although genuine issues of material fact remain on Hale Haven's reformation claim, Hale Haven cannot show that Auto-Owners breached the insurance policy as written, Hale Haven's enforcement-of-the-check claim was untimely, and Hale Haven's claims for bad faith damages and attorney fees fail as a matter of law. Thus, the trial court correctly denied summary judgment on the reformation claim but erred in denying summary judgment in Auto-Owners' favor on the remaining claims. We also conclude that the trial court correctly denied Hale Haven's motion for summary judgment because a jury issue exists regarding whether Hale Haven was negligent in its alleged failure to obtain and read the insurance policy, so as to prejudice Auto-Owners.

In the next two appeals, A18A0133 and A18A0147, the Bank Appellants appeal from the trial court's denial of their motions for summary judgment against Auto-Owners and Hale Haven, respectively, and Hale Haven cross-appeals from the trial court's denial of its summary judgment motion against the Bank Appellants. Regarding the Bank Appellants' appeal against Auto-Owners, we vacate the trial

court's denial of summary judgment and remand for consideration of whether Auto-Owners' cross-claim was time-barred. As to the Bank Appellants' appeal against Hale Haven, we conclude that the trial court properly denied summary judgment because a jury issue exists regarding the Bank Appellants' commercial reasonableness in accepting and paying on the insurance check. We also determine that the trial court properly denied summary judgment on Hale Haven's cross-appeal against the Bank Appellants because the Bank Appellants are not foreclosed from asserting the defense of commercial reasonableness.

Accordingly, we affirm in part, reverse in part, vacate in part, and remand for further proceedings consistent with this opinion.

"On appeal from a grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom most favorably to the nonmoving party." (Citation omitted.) *American Mfg. Mut. Ins. Co. v. E A Technical Svcs., Inc.*, 270 Ga. App. 883 (608 SE2d 275) (2004).

So viewed, the record shows that Hale Haven sold a shopping center to VPS Enterprises, LLC in 2010, while maintaining a mortgagee interest in the property. As part of the sale, Hale Haven and VPS entered into a security agreement, which required VPS to maintain insurance coverage on the property. The security agreement

3

also provided that in the event of a "loss under any such policy of insurance," Hale Haven was authorized to apply the insurance proceeds to the mortgage debt on the property, which was $3,000,000 at the time of the sale.

In 2011, an agent for VPS, Dennis Pack, procured insurance coverage for the property from Auto-Owners, and asked for Hale Haven to be named as the mortgagee on the policy. The policy application provided for both property coverage and general liability coverage, and, on the application, Hale Haven was named as a mortgagee for both types of coverage. An underwriter with Auto-Owners approved this application. However, when the formal one-year insurance policy was issued, Hale Haven was only listed as a mortgagee on the general liability section and not the property coverage section. This same insurance policy was automatically renewed in 2012.

In 2013, VPS made a property insurance claim to Auto-Owners, stemming from damage after a hailstorm.[1] On the "proof of loss" form, Hale Haven was listed as having an interest in the property. In November 2013, Auto-Owners issued a check as payment on the claim to "VPS ENTERPRISES LLC AND HALE HAVEN PROPERTIES LLC," in the amount of $465,346.96, and Auto-Owners gave that

---

[1] The property damage coverage part is the only coverage at issue in this case.

4

check to Pack. Auto-Owners added Hale Haven to the check because it had conducted a title search on the property and learned that Hale Haven was a mortgagee.

On November 25, 2013, Pack formed a limited liability company named "vps enterprises and hale haven properties llc," and on the company's articles of organization, he was listed as the sole registered agent and organizer for the company. An IRS employer identification number was assigned to the company, and the company was also issued a certificate of organization from the State of Georgia.

The next day, Pack presented these business documents at a Regions Bank branch and he opened a business account named "VPS ENTERPRISES AND HALE HAVEN." Pack deposited the insurance check into this new account, but because he did not endorse the check, Auto-Owners requested that Regions Bank rescind the deposit. Regions Bank complied, and Auto-Owners reissued the check in the same amount, again making it payable to "VPS ENTERPRISES LLC AND HALE HAVEN PROPERTIES LLC." In depositing this new check, Pack signed his name on the reverse and printed, "VPS ENTERPRISES LLC HALE HAVEN PROPERTIES LLC." Bank of America, with whom Auto-Owners had its account, was the drawee (or payor) bank. After the funds were deposited by Bank of America into the Regions

5

Bank account Pack had opened, he wired $450,000 to an international checking account and he appears to have later left the country.

Hale Haven only became aware that the property had been damaged when a roofing contractor sought payment for repairs that had been performed on the property. When Hale Haven visited and inspected the property, it found the repairs to be incomplete and contacted Auto-Owners. Auto-Owners, however, informed Hale Haven that it had already issued full payment on a hail damage claim made by VPS, that Hale Haven was named on the check, and that Auto-Owners was not responsible for any improper signature on that check. VPS ultimately defaulted on its mortgage payments for the property, and Hale Haven repurchased it at foreclosure for $1,200,000, and then resold it at a loss for approximately $800,000.

After receiving no payments from the insurance claim, Hale Haven filed suit in Fulton County State Court in June 2014, alleging breach of contract against Auto-Owners and conversion against Bank of America.[2] Hale Haven dismissed this state court case without prejudice in September 2015. Then, less than five months later,

_____

[2] This initial action included a negligence claim against Auto-Owners, but Hale Haven later abandoned this claim in its amended complaint in the Fulton County Superior Court. Hale Haven also sued the insurance agents, but after settling with those parties, they were dismissed from the case.

6

Hale Haven filed a renewal action in the Fulton County Superior Court, pursuant to OCGA § 9-2-61. In addition to its initial breach-of-contract claim against Auto-Owners, Hale Haven requested reformation of the insurance policy, and added claims for enforcement of the check under OCGA § 11-3-309; bad faith damages and attorney fees under OCGA § 33-4-6 for a refusal to pay the insurance claim; and attorney fees under OCGA § 13-6-11 for stubborn litigiousness. Hale Haven also added Regions Bank to the lawsuit, suing them for conversion of the check. Auto-Owners then filed a cross-claim against the Bank Appellants, arguing that they "failed to comply with commercially reasonable and necessary steps" before approving payment on the check.

Auto-Owners and the Bank Appellants moved for summary judgment on all the claims filed against them. Hale Haven also filed a motion for partial summary judgment on its conversion claim against the Bank Appellants and on its claim that Auto-Owners was obligated to pay Hale Haven the amount of the insurance proceeds. After a hearing, the trial court denied all the parties' summary judgment motions, and these appeals followed.

The threshold question for each of Hale Haven's claims against Auto-Owners is whether they were timely under the renewal statute in conjunction with the two-year limitation period in the insurance policy.

> OCGA § 9-2-61 (a) permits a plaintiff to dismiss and recommence a suit within the original applicable period of limitation or within six months after the dismissal, whichever is later. If the statute of limitation has not run, the plaintiff may add new parties and new claims to the refiled action; however, if the statute of limitation has expired, the plaintiff is limited to suing the same defendants under the same theories of recovery. The new petition must be substantially the same as the original as to the essential parties. The renewal statute may not be used to suspend the running of the statute of limitation as to defendants different from those originally sued.

(Citations and punctuation omitted.) *Ward v. Dodson*, 256 Ga. App. 660, 661 (569 SE2d 554) (2002). The insurance policy provides: "No one may bring a legal action against us under this [Commercial Property] Coverage part unless . . . [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred."

Here, Hale Haven's original action was timely filed in state court in June 2014, well within the two-year limitation period provided in the insurance policy. Because this instant case was filed within six months after Hale Haven dismissed its initial

8

lawsuit — the time frame in the renewal statute — the limitation period in the insurance policy does not provide a time-bar to any claims properly brought in the renewal action. *Blue Ridge Ins. Co. v. Maddox*, 185 Ga. App. 153 (1) (363 SE2d 595) (1987).[3] The timeliness of each claim against Auto-Owners under the renewal statute will be discussed in turn.

*Case No. A18A0132*

1. Auto-Owners argues that the trial court erred in denying its summary judgment motion against Hale Haven because (1) Hale Haven's renewal action was untimely filed after the two-year limitation period in the insurance policy; and (2) Hale Haven's claims for breach of contract, reformation, enforcement of the check, bad faith, and attorney fees all fail as a matter of law. Although we conclude that the reformation claim was properly brought in the renewal action, and genuine issues of material fact remain as to this claim, the trial court erred in its denial of summary judgment as to all of Hale Haven's remaining claims against Auto-Owners.

---

[3] The trial court properly recognized that because Auto-Owners was a defendant in the first lawsuit, it cannot challenge the renewal action on the basis that the parties in Hale Haven's second lawsuit varied from those in the first. See *Dodson*, supra, 256 Ga. App. at 661 ("The renewal statute may not be used to suspend the running of the statute of limitation as to defendants *different from those originally sued*.") (citation omitted; emphasis supplied).

9

*(a) Breach of the Insurance Policy*

Auto-Owners contends that it did not breach the insurance policy as written and that Hale Haven is not entitled to reformation of the insurance policy as a matter of law. Although we determine that Hale Haven cannot demonstrate that Auto-Owners committed a breach on the insurance policy as written, there are genuine issues of material fact regarding whether the policy should be reformed to name Hale Haven as an additional insured mortgagee on the property coverage part of the insurance policy.

*(i) Breach of contract on the policy as written*

At the outset, we note that this claim is substantially the same as the breach-of-contract claim asserted in the original state court complaint, and no timeliness issue arises here under the renewal statute. *Soley v. Dodson*, 256 Ga. App. 770, 772 (569 SE2d 870) (2002) ("To suspend the running of the statute of limitation in a renewal action, the cause of action must be substantially the same as in the original action.") (citation and footnote omitted).

"Construction of an insurance policy is governed by the ordinary rules of contract construction, and when the terms of a written contract are clear and unambiguous, the court is to look to *the contract alone* to find the parties' intent."

10

(Citation omitted; emphasis supplied.) *Ins. Co. of Pennsylvania v. APAC-Southeast, Inc.*, 297 Ga. App. 553, 557 (677 SE2d 734) (2009); *Infinity Gen. Ins. Co. v. Litton*, 308 Ga. App. 497, 500 (2) (707 SE2d 885) (2011). "Where the contractual language is explicit and unambiguous, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." (Citations omitted.) *Georgia Farm Bureau Mut. Ins. Co. v. Smith*, 298 Ga. 716, 719 (784 SE2d 422) (2016). "The proper construction of a contract, and whether the contract is ambiguous, are questions of law for the court to decide." (Citation omitted.) *APAC-Southeast*, supra, 297 Ga. App. at 557.

The text of the insurance policy is neither unclear nor ambiguous. The property coverage section provides, "SECURED INTERESTED PARTIES: None." Indeed, Hale Haven is not named *anywhere* in this section of the policy. Hale Haven's reliance on the testimony of the insurance agent and an underwriter regarding their interpretation of the policy is unavailing; when we are presented with clear and unambiguous contract terms, "we enforce [those] terms as written and do not look elsewhere to assist in the contract's interpretation." (Citation omitted.) *Donchi, Inc. v. Robdol, LLC*, 283 Ga. App. 161, 166 (2) (640 SE2d 719) (2007). Therefore, as a

11

matter of law, Hale Haven does not show that Auto-Owners breached a contractual obligation with regard to the property loss at issue, based on the policy as written.[4]

### (ii) Reformation

First, under our Supreme Court precedent, the reformation claim was timely. In *Birmingham Fire Ins. Co. of Pa. v. Commercial Transp.*, *Inc.* 224 Ga. 203 (160 SE2d 898) (1968), the insured sued its carrier on the insurance policy within the policy's 12-month limitation period, dismissed the action, and then brought a renewal action for reformation less than six-months later. Noting that the appellee "was seeking to recover for the same loss under the same policy," id. at 204 (1), the Court deemed the renewal action timely under the renewal statute, even though the 12-month limitation period in the policy had since elapsed. Id. Therefore, we similarly

---

[4] Hale Haven argues that because Auto-Owners did not assert that Hale Haven was not insured under the policy when it denied Hale Haven's request for payment, Auto-Owners cannot do so now. Hale Haven relies on *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 287 Ga. 149 (695 SE2d 6) (2010), in which an insurer *defended the insured* in the underlying lawsuit, and failed to reserve the right to later assert that its insured was not covered under the policy. Id. at 156 (2). Hale Haven's reliance on this case is misplaced because Auto-Owners did not undertake any such defense in this case. *R&G Investments & Holdings, LLC v. Am. Family Ins. Co.*, 337 Ga. App. 588, 599 (4) (b) (787 SE2d 765) (2016), cert. denied (Feb. 27, 2017) ("reservation of rights is a term of art applicable in the specific context where an insurer *undertakes a defense of its insured*.") (citation omitted).

conclude that Hale Haven's reformation claim was properly brought in its renewal action.[5]

Having found the claim timely, we now determine whether a jury issue exists as to reformation that would have precluded summary judgment to Auto-Owners.[6]

---

[5] We note that had Hale Haven been an insured under the property coverage part, it may have been entitled to all the insurance proceeds, to the exclusion of VPS, insofar as the mortgage debt at the time of the loss exceeded the insurance proceeds. The policy contains clauses providing that Auto-Owners will pay for a covered loss "to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear," and "may pay to the mortgage holder the whole principal on the mortgage." The policy also contains a standard mortgage clause, which "creates a separate and distinct contract on the mortgagee's interest which protects the mortgagee's interest independent of the status of the insured." (Citation omitted.) *American Central Ins. Co. v. Lee*, 273 Ga. 880, 881 (1) (548 SE2d 338) (2001); see also *Balboa Life & Cas., LLC v. Home Builders Finance, Inc.*, 304 Ga. App. 478, 480 (1) (697 SE2d 240) (2010) (as against the insurer, mortgagee established basis for award of all the insurance proceeds); *Pearlman v. Security Bank & Trust Co. of Albany*, 261 Ga. App. 270, 271 (582 SE2d 219) (2003) ("Where the evidence demonstrates that the amount of debt is in excess of the insurance proceeds, a debtor has no interest in the policy proceeds.") (citation omitted).

[6] Auto-Owners posits, without any citation to authority, that the reformation claim was not properly brought in the renewal action because it could not have been filed in the original action, given that the state court lacks jurisdiction over equitable remedies. This argument is unpersuasive because "the mere fact that a recovery may not have been authorized will not constitute such an action void where the trial court had jurisdiction of the cause of action." (Citation omitted.) *Birmingham Fire Ins. Co. of Pa.*, supra, 224 Ga. at 204 (1). Although the state court may not have been authorized to reform the contract, it had jurisdiction over the original breach-of-contract claim. Thus, the original action was not void so as to bar the reformation claim in the renewal action. Id.

A petition for reformation of a written contract will lie where by mistake of the scrivener and by oversight of the parties, the writing does not embody or fully express the real contract of the parties. The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction.

(Citation omitted.) *E A Technical Svcs., Inc.*, supra, 270 Ga. App. at 885 (1).

In the insurance application, Hale Haven was explicitly named as a mortgagee for purposes of property coverage. One of the underwriters noted on the application, "O.K. to issue per App[lication]," and Auto-Owners approved the application. A "processor" in the underwriting department transcribed the information from the application into Auto-Owners' system. On the "Evidence of Commercial Property Insurance" document issued by the insurance agent, Hale Haven was listed as the mortgagee under the property coverage portion of the policy, and there is no evidence that Auto-Owners later determined that Hale Haven was not to be named on both sections of the policy. Further, the insurance agent testified that the issued policy is *required* to conform with the application. Both the insurance agent and an underwriter with Auto-Owners explained that a party named as a mortgagee under the general liability section of the policy would also have to be listed as a mortgagee on

14

the property coverage section. Lastly, no party contends that the coverage terms had changed for the year that the hail damage occurred.[7]

Viewing this evidence in the light most favorable to Hale Haven as the non-movant, we discern genuine issues of material fact as to whether the policy should be reformed.

Auto-Owners claims that Hale Haven is not entitled to reformation of the policy as a matter of law because Hale Haven was negligent in failing to read the policy, resulting in prejudice to Auto-Owners.[8] Similarly, Auto-Owners posits that Hale Haven's security deed required VPS to submit proof of insurance, and Hale Haven negligently failed to insist on receiving a copy of the policy from VPS despite

---

[7] Auto-Owners maintains that Hale Haven did not suffer a loss because it did not pay for the roof repairs. Even after the roof repairs, however, which would have presumably improved the building's value from the value prior to the repairs, Hale Haven nonetheless suffered a "net loss" after the resale of the property. This net loss could give the mortgagee the right to insurance proceeds. *Georgia Farm Bureau Mut. Ins. Co. v. Brewer*, 202 Ga. App. 127, 128-129 (413 SE2d 770) (1991); *Balboa Life & Cas.*, supra, 304 Ga. App. 478 at 480 (1). The record shows that Hale Haven repurchased the property at foreclosure for $1,200,000, but then resold it at a loss for approximately $800,000. Therefore, *if* it is determined that Hale Haven had a right to the insurance proceeds, the record does not show that that right has been extinguished solely because Hale Haven did not pay for roof repairs.

[8] See OCGA § 23-2-32 (b) (equitable relief "may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby.").

its knowledge of VPS's failure to comply with other requirements of the security deed. We are not persuaded that this entitles Auto-Owners to summary judgment.

"The negligence of the complaining party, preventing relief in equity, is that want of reasonable prudence, the absence of which would be a violation of legal duty." OCGA § 23-2-32 (a). However, "[t]he failure of a party to read a contract which is not signed by that party, such as a policy of insurance, does not bar reformation as a matter of law." (Citation omitted.) *Georgia Farm Bureau Mut. Ins. Co. v. Wall*, 242 Ga. 176, 179 (2) (249 SE2d 588) (1978); *Assaf v. Cincinnati Ins. Co.*, 327 Ga. App. 475, 481 (1) (c) (759 SE2d 557) (2014); *Hearn v. Great Southwest Surplus Lines Ins. Co.*, 193 Ga. App. 31 (386 SE2d 859) (1989). Compare *Virginia Mut. Ins. Co. v. Price*, 132 Ga. App. 445, 448 (208 SE2d 314) (1974) (mortgagee's failure to read the policy precluded recovery on the policy *as written*).

Although Auto-Owners has conceivably been prejudiced, having already paid on the insurance claim, the deposition testimony on which Auto-Owners relies does not demonstrate that Hale Haven was negligent as a matter of law in failing to read the policy. Rather, the record evinces a fact question as to precisely what insurance documents Hale Haven possessed. Hale Haven testified that it did not receive "the

16

policy itself"[9] until it filed suit. Rather, it received an "Evidence of Commercial Property Insurance" document which explicitly named Hale Haven as a mortgagee for purposes of property coverage.

Not only are there fact issues regarding which documents were delivered to Hale Haven, there is evidence tending to show that Hale Haven possessed a form expressly reflecting its mortgagee status for purposes of property coverage. And although Auto-Owners claims that Hale Haven made no effort to get a copy of the policy, "questions of negligence or of diligence are ordinarily questions for the jury." *Bender v. Randall Bros.*, 189 Ga. 197, 199 (1) (5 SE2d 889) (1939); *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 404 (349 SE2d 368) (1986) (jury issue existed as to whether insurer was negligent in relying on its computer (and not the policy file) to determine value of appellee's insurance policies, after computer error resulted in insurer overpaying on the policies). On this record, it is for the jury to determine whether Hale Haven was negligent in failing to ascertain the contents of the property coverage

_____

[9] Auto-Owners argues that Hale Haven admitted to receiving "declarations pages" for the policy, and Auto-Owners refers to Hale Haven's testimony that it received a "certificate or declaration page." We note, however, that there are separate declaration pages for each coverage part of the policy, and Hale Haven never specifically admitted to receiving a declaration page for the property coverage part, which would have indicated the absence of a mortgagee identified in the policy.

portion of the policy, and thus, the trial court correctly denied summary judgment to Auto-Owners as to the reformation claim.

*(b) Enforcement of lost, destroyed, or stolen check*

Auto-Owners contends that Hale Haven's claim to enforce the check fails as a matter of law because it was not asserted in the original lawsuit and is not a proper claim in the renewal action. We agree.

Under OCGA § 11-3-309 (a),

[a] person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred; (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure; and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

The statutory limitation period for this claim is three years. OCGA § 11-3-118 (g). However, "[i]n Georgia, regardless of the form of the action, if the source of the right claimed has evolved from the written contract of insurance, the limitations contained in it supersede any other general statutory limitations." (Citations omitted.)

18

*East Tennessee Mtg. Co. v. U.S. Fidelity & Guar. Co.*, 268 Ga. 536, 538 (491 SE2d 333) (1997).

The source of Hale Haven's right to possess the check would have evolved from the written insurance policy because Auto-Owners issued the check based on the existence of the policy. Thus, the two-year limitation period in the policy applies to this claim, and Hale Haven must have asserted this claim within two years for it to be timely. See *East Tennessee Mtg.*, supra, 268 Ga. at 538.

Further, the renewal statute is inapplicable to save this claim from being time-barred. As compared to Hale Haven's breach-of-contract claim in its original lawsuit, the claim to enforce the check as a lost, destroyed or stolen instrument is "a new cause of action based on a new theory of recovery." *Safi-Rafiq v. Balasubramaniam*, 298 Ga. App. 274, 276 (679 SE2d 822) (2009). To illustrate, this claim has different elements and it is premised on different factual allegations, including the assertion that Hale Haven is unable to locate Pack. Thus, it is not substantially the same as the breach-of-contract claim. See *Burns v. Dees*, 252 Ga. App. 598, 607-608 (1) (d) (557 SE2d 32) (2001) (unjust enrichment and quantum meruit claims not substantially the same as breach-of-contract claim).

Given that Hale Haven filed its renewal action in February 2016, more than two years after Pack wrongfully cashed the check, this claim is untimely.

We recognize, as Hale Haven argues, that "[a]n insurance company may waive the contractual limitation provision where the company leads the insured by its actions to rely on its promise to pay, express or implied." See *Auto-Owners Ins. Co. v. Ogden*, 275 Ga. 565, 566 (2) (569 SE2d 833) (2002). Here, however, the record contains no discussions, negotiations, or any interactions whatsoever that would have lulled Hale Haven into believing that it would not be required to file suit against Auto-Owners. See id. In fact, Hale Haven admits that from the outset, Auto-Owners informed Hale Haven that it had already paid the claim. Auto-Owners maintained this position in May 2014, in response to Hale Haven's demand letter for payment. It is clear, therefore, that Auto-Owners did not waive the two-year limitation period in the policy through its conduct with Hale Haven. *Modern Carpet Indus., Inc. v. Factory Ins. Assn.*, 125 Ga. App. 150, 151 (186 SE2d 586) (1971) (insurer did not waive 12-month contractual limitation period where it made a "final denial" within the limitation period and there was "no evidence that the conduct of the company lulled or prevented plaintiff [from] bringing the action within the stipulated time").

20

Thus, we conclude that the trial court erred in its denial of summary judgment to Auto-Owners on this claim.

*(c) Bad faith damages and attorney fees*

Auto-Owners argues that the trial court erred in denying summary judgment on Hale Haven's claims for bad faith damages and attorney fees under OCGA § 33-4-6 for a refusal to pay on the claim, as well as attorney fees under OCGA § 13-6-11 for stubborn litigiousness. We agree. Pretermitting whether these claims were substantially the same as Hale Haven's original breach-of-contract action, so as to be considered properly brought in Hale Haven's renewal lawsuit, the trial court erred in determining that they present genuine issues of material fact.

*(i) Bad faith damages and attorney fees under OCGA § 33-4-6*

Even assuming for purposes of this argument that the contract should be reformed so as to establish Hale Haven as an insured under the property coverage section of the policy, Hale Haven does not demonstrate that Auto-Owners refused to pay the claim in bad faith.

> To prevail on a claim for an insurer's bad faith under OCGA § 33-4-6, the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay

21

was motivated by bad faith. Penalties for bad faith are not authorized, however, where the insurance company has *any* reasonable ground to contest the claim and where there is a disputed question of fact. Bad faith is shown by evidence that under *the terms of the policy* under which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment.

(Citations and punctuation omitted; emphases supplied.) *Lawyers Title Ins. Corp. v. Griffin*, 302 Ga. App. 726, 730-731 (2) (b) (691 SE2d 633) (2010). "An insurer thus having any reasonable factual or legal ground for contesting a claim is entitled to summary judgment under . . . OCGA § 33-4-6." (Citations omitted.) *Amica Mut. Ins. Co. v. Sanders*, 335 Ga. App. 245, 250 (779 SE2d 459) (2015).

When Hale Haven made its demand for payment, Auto-Owners refused because it had already received a claim from VPS for the same property damage, and had paid on that claim in the full amount of the repair estimate. The evidence shows that VPS was the only named insured on the property coverage section of the insurance policy, that Auto-Owners named Hale Haven as a co-payee, and that Pack, VPS's agent, cashed the check. It is therefore clear that even if Auto-Owners ultimately is liable to Hale Haven, it had a reasonable basis to refuse Hale Haven's demand for payment when made. See, e.g., *Griffin*, supra, 302 Ga. App. at 731 (2) (b)

22

(insurer had a reasonable basis for nonpayment where it contended that the insured did not have a covered loss under the insurance policy). Therefore, Auto-Owners was entitled to summary judgment on this claim.

*(ii) Attorney fees under OCGA § 13-6-11*

Again, even presuming that Hale Haven is deemed an insured under the policy for purposes of property coverage, this claim fails as a matter of law. "[Hale Haven's] claim for . . . attorney fees[] under OCGA § 13-6-11 was not authorized because the penalties contained in OCGA § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds." (Citation and punctuation omitted.) *Balboa Life & Cas.*, supra, 304 Ga. App. at 483 (3). Hale Haven, therefore, would not have been entitled to recover attorney fees under this statute. Accordingly, the trial court erred in denying Auto-Owners' motion for summary judgment seeking dismissal of Hale Haven's claim for attorney fees under OCGA § 13-6-11. Id.

In summary, in Case No. A18A0132, we affirm the denial of summary judgment to Auto-Owners as to the reformation claim. We reverse the trial court's denial of summary judgment to Auto-Owners on Hale Haven's claims for breach-of-contract on the written policy, enforcement of the check, bad faith damages and attorney fees under OCGA § 33-4-6, and attorney fees under OCGA § 13-6-11.

23

2. Hale Haven cross-appeals from the trial court's denial of its motion for partial summary judgment against Auto-Owners. Given our determinations in Divisions 1 (a) (i) and (b), we address Hale Haven's remaining arguments in its appeal.

### (a) Reformation

Hale Haven argues that it was entitled to summary judgment on its reformation claim. We disagree.

Under OCGA § 23-2-32 (b), equitable relief, such as reformation of a contract, "may be granted even in cases of negligence by the complainant *if it appears that the other party has not been prejudiced thereby*." (emphasis supplied); see *Eaton Yale & Towne, Inc. v. Strickland*, 228 Ga. 430, 435 (2) (a) (185 SE2d 923) (1971) (acknowledging this legal principle in a case involving an insurance contract); *Occidental Fire & Cas. of North Carolina v. Goodman*, 339 Ga. App. 427, 429 (1) (793 SE2d 606) (2016) (same). Under this rule, the general question is "whether the circumstances have so changed that it would be inequitable to require full restitution." (Citation omitted.) *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 405 (349 SE2d 368) (1986). Also, the rule "is subject to a weighing of the equities between the parties by

24

the trier of fact." (Citation omitted.) *Haugabook v. Crisler*, 297 Ga. App. 428, 434 (677 SE2d 355) (2009).

As discussed in Division 1, fact issues exist regarding what policy documents Hale Haven received and whether Hale Haven was negligent in its alleged failure to obtain and read the insurance policy. Additionally, Auto-Owners shows that it will be prejudiced under a reformed policy because it has already paid the repair estimate for the property damage, in the amount of $465,346.96. Compare *Goodman*, supra, 339 Ga. App. at 430 (2) (no prejudice to the insurer under reformed policy because, absent reformation, insurer would have received a "windfall not bargained for."). Thus, we cannot say that Hale Haven was entitled to reformation of the insurance policy as a matter of law, and the trial court did not err in its denial of summary judgment as to this claim.

*(b) Rights under the standard mortgage clause*

Hale Haven posits that, under the policy as written, it is entitled to payment from Auto-Owners pursuant to the standard mortgage clause.[10] We disagree.

---

[10] Relevantly, the insurance policy provided:

If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with

25

[I]t is well established that a mortgagee possesses an insurable interest in the property covered by the mortgage, OCGA § 33-34-4, and that the standard or union mortgage clause, such as the one in issue here, creates a separate and distinct contract on the mortgagee's interest which protects the mortgagee's interest independent of the status of the insured.

(Citation omitted.) *American Central Ins. Co.*, supra, 273 Ga. at 881 (1).

Crucially, however, the standard mortgage clause in the policy here appears in the property coverage form, and not the general liability coverage form. Thus, unless it is determined that Hale Haven is entitled to reformation so as to name Hale Haven as a mortgage holder under the property coverage section of the policy, Hale Haven cannot rely on the standard mortgage clause in the policy as currently written.

---

the terms of this Coverage Part: (1) [t]he mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and (2) [t]he mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired. At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

Therefore, in Case No. A18A0134, we affirm the trial court's denial of Hale Haven's motion for partial summary judgment against Auto-Owners.

*Case No. A18A0133*

3. In this case, the Bank Appellants appeal from the trial court's denial of their summary judgment motion both as to Auto-Owners' cross-claim for a failure to adhere to commercially reasonable standards[11] and Hale Haven's conversion claim. We vacate the denial of summary judgment as to Auto-Owners' cross-claim and remand for the trial court to consider whether it was time-barred, but we conclude that the trial court correctly denied summary judgment as to Hale Haven's conversion claim because a jury issue exists regarding the Bank Appellants' commercial reasonableness.

*(a) Auto-Owners' cross-claim*

The Bank Appellants argue that Auto-Owners' cross-claim is time-barred by OCGA § 11-4-406, as well as Auto-Owners' deposit agreement with Bank of America.

OCGA § 11-4-406 (f) provides:

---

[11] Auto-Owners initially included a conversion claim in its cross-claim, but then abandoned that claim.

27

Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer . . . discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.

"Under OCGA § 11-4-103 (a), a bank and its customer may vary the provisions of Article 4 by contract." (Citation omitted.) *Sec. State Bank v. Visiting Nurses Assn. of Telfair County, Inc.*, 256 Ga. App. 374, 376 (3) (568 SE2d 491) (2002). "An account agreement is controlling unless it is manifestly unreasonable." (Citation and footnote omitted.) *Vadde v. Bank of America*, 301 Ga. App. 475, 481 (2) (687 SE2d 880) (2009). The deposit agreement between Bank of America and Auto-Owners reads,

if you fail to notify us in writing of suspected problems or unauthorized transactions within 60 days after we make your statement . . . available to you, you agree that: you may not make a claim against us relating to the unreported problems or unauthorized transactions, regardless of the care or lack of care we may have exercised in handling your account; and you may not bring any legal proceedings or action against us to recover any amount alleged to have been improperly paid out of your account.

Bank of America issued an account statement to Auto-Owners, dated December 31, 2013, covering the period during which Pack cashed the check. The Bank Appellants argue that Auto-Owners did not, thereafter, submit any claim, fraud statement, or reimbursement request until its cross-claim in November 2016, after both the 60-day period in the deposit agreement and one-year period in OCGA § 11-4-406 had elapsed. Auto-Owners, on the other hand, contends that the deposit agreement is manifestly unreasonable as to the specific facts of this case and that Bank of America was notified of the issue with the check within the one-year time frame enunciated in OCGA § 11-4-406. Although both parties' timeliness arguments were raised in the trial court, the record does not show that the trial court addressed them.

"Thus, if we were to conclude that the trial court erred, it would be on account of an issue never ruled on below." *Nebo Ventures, LLC v. NovaPro Risk Solutions, L.P.*, 324 Ga. App. 836, 848 (4) (752 SE2d 18) (2013).

> [W]hen this Court reviews a decision of a trial court on a motion for summary judgment, it sits as a court for the correction of errors of law. An error of law has as its basis a specific ruling made by the trial court. And although in certain instances an appellate court can review a record and determine that a summary judgment ruling was right for some

reason other than that given by the trial court, an appellate court should not consider whether the trial court was "wrong for any reason."

(Citation omitted.) *Piedmont Hosp., Inc. v. D.M.*, 335 Ga. App. 442, 448-449 (3) (779 SE2d 36) (2015). These timeliness arguments are therefore beyond our proper scope of review. Id. at 449 (3); *Terry v. Catherall*, 337 Ga. App. 902, 906 (2) (789 SE2d 218) (2016); *Strength v. Lovett*, 311 Ga. App. 35, 45 (2) (b) (714 SE2d 723) (2011). Accordingly, we vacate the trial court's denial of the Bank Appellants' summary judgment motion as to Auto-Owners' cross-claim and remand for the trial court to consider in the first instance whether the cross-claim is time-barred. Id. (vacating the order denying summary judgment and remanding for the trial court to address the appellant's issue raised below); *Nebo Ventures, LLC*, supra, 324 Ga. App. at 849 (4).

### *(b) Hale Haven's conversion claim*

The Bank Appellants argue that the trial court erred in denying their summary judgment motion against Hale Haven on its conversion claim because they "acted reasonably in accordance with standard banking practice" in accepting and paying the check. We discern no error.

"An instrument is . . . converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or

30

obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." OCGA § 11-3-420 (a).[12] As is explained in the Official Comments to the UCC, when an instrument is payable to joint payees, "neither payee acting without the consent of the other, is a person entitled to enforce the instrument." OCGA § 11-3-420, Official Comment 1.[13] Regardless of whether Auto-Owners was obligated to pay Hale Haven as a result of the insurance claim, the sole fact that Auto-Owners included Hale Haven as a payee on the check gave Hale Haven a right to possession of the check. *Trust Co. of Columbus v. Refrigeration Supplies, Inc.*, 241 Ga. 406, 409 (246 SE2d 282) (1978). Further, insofar as the Bank Appellants assert the reasonableness of their actions as a defense, "[w]hether reasonable commercial standards have been met is a question of fact to be resolved by the jury." (Citation omitted.) *Tifton Bank & Trust Co. v. Knight's Furniture Co., Inc.*, 215 Ga. App. 471, 474 (1) (b) (452 SE2d 219) (1994); *Gerber & Gerber, P.C.*

___

[12] See OCGA § 11-3-110 (d) ("If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced *only* by all of them.") (emphasis supplied); *Peavy v. Bank South, N.A.*, 222 Ga. App. 501, 504 (1) (474 SE2d 690) (1996).

[13] "In order to determine the meaning and purpose behind the enactment of a Georgia Commercial Code provision that is taken verbatim from the UCC, we turn to the UCC Official Comments for assistance." *Metzger v. Americredit Financial Svcs., Inc.*, 273 Ga. App. 453, 457 n. 3 (615 SE2d 120) (2005).

*v. Regions Bank*, 266 Ga. App. 8, 12 (2) (596 SE2d 174) (2004) (under former version of OCGA § 11-3-103 (a) (4), whether a party's conduct meets reasonable commercial standards of fair dealing is ordinarily a question that must be resolved by the factfinder).

The record shows that the check stated, "[t]his document must be endorsed by the payee as described herein, and if payable to more than one person or firm, *must be separately endorsed by each of the payees*." (emphasis supplied.) Although the check is expressly made out to two distinct limited liability companies, VPS ENTERPRISES LLC AND HALE HAVEN LLC, Regions Bank accepted the check for deposit into a "single-party" account, and accepted Pack's single signature as a proper endorsement without inquiring as to whether he was authorized to endorse the check for each limited liability company named on the check. Regions Bank testified that there was no specific bank policy that allows it to accept a check payable to a corporate payee when there is "a reasonable match" between the payee and the bank account holder. Further, although the Bank Appellants claim that Auto-Owners had informed Regions Bank that Pack properly *possessed* the check, this is distinct from whether he was authorized to *endorse* it for both payees. See e.g. *Thornton & Co. v. Gwinnett Bank & Co.*, 151 Ga. App. 641, 647 (4) (260 SE2d 765) (1979) (questions

32

of fact existed as to whether bank complied with reasonable commercial standards of due care where it made payments on checks with forged endorsements).[14]

Likewise, Bank of America paid on this same check that had not been separately endorsed by each of the limited liability companies indicated on the payee line. We recognize the general principle that the first bank in the collection chain has the best opportunity to verify the endorsement and a corresponding duty to ensure the validity of that endorsement. See *First Nat. Bank of St. Paul v. Trust Co. of Cobb County*, 510 F. Supp. 651, 655 (N.D. Ga. 1981). Our Supreme Court, however, has held that *both* the collecting and drawee banks may be liable on a conversion claim involving the missing endorsement of a joint payee. *Trust Co. of Columbus*, supra, 241 Ga. at 409. And in a case such as this, where explicit directives regarding proper endorsement were printed on the Bank of America check itself, and Bank of America would conceivably be aware of these instructions, the reasonableness of Bank of America's conduct in paying on the check in contravention of its own directives should also be decided by a jury.

---

[14] Because we recognized in Division (1) (a) (ii) that insurance proceeds may be used by a mortgagee to cover a "net loss" after foreclosure, we reject the Bank Appellants' argument that Hale Haven presented no evidence of actual damages.

33

Viewing the evidence in the light most favorable to Hale Haven as the non-movant, we conclude that there are genuine issues of material fact on this issue, and the trial court correctly denied the Bank Appellants' summary judgment motion on Hale Haven's conversion claim.

*Case No. A18A0147*

4. Finally, Hale Haven challenges the trial court's denial of its summary judgment motion against the Bank Appellants on the conversion claim. The crux of Hale Haven's argument in this appeal is that, as a matter of law, the Bank Appellants waived any defense that they acted in a commercially reasonable manner. Hale Haven's position is that the endorsement was "indisputably irregular on its face" and the Bank Appellants failed in their duty to make a further inquiry. Again, however, we affirm the trial court's decision.

As discussed above in Division 3 (b), the question of commercial reasonableness is generally reserved for the jury. Here, we must construe the evidence and inferences in a manner most favorable to the Bank Appellants as the non-movants.

Regions Bank's retail operations manager, who manages operations in 15 Regions Bank branches, found that the endorsement was reasonable. She explained

34

that because commercial business accounts receive deposits from varying sources, there is "a little latitude" allowed with regard to the named payee and the manner of endorsement. She also testified that there was a reasonable match between the payees on the check and the name of the bank account holder, "VPS ENTERPRISES AND HALE HAVEN," and that given the "single-party" bank account that Pack had opened, Regions Bank accepted the check as a "single-party" check. Additionally, she identified the documents Pack had presented to open the account, namely, the IRS employer identification number and the certificate of organization from the State of Georgia. Regions Bank also presented an affidavit from its Branch Services Leader, indicating that it had confirmed with the Georgia Secretary of State that Pack was the registered agent for the business he had formed. See *First Rome Bank v. Reese Oil Co., Inc.*, 206 Ga. App. 667, 669 (2) (426 SE2d 384) (1992) ("opinion evidence by the opponent of summary judgment, such as the bank president's affidavit . . . , can alone be sufficient to preclude summary judgment.") (citations omitted).

We also note that Pack's *printed* endorsement on the reverse of the check included the names of both limited liability companies. Therefore, a jury may determine that Bank of America, when presented with the check, would not have discovered an endorsement that was irregular enough to cause Bank of America to

35

question its validity. We determine that the endorsement "may not be so irregular on its face as to prevent [the Bank Appellants'] assertion of the [commercial reasonableness] defense." *Thornton & Co.*, supra, 151 Ga. App. at 647 (4) (addressing reasonable commercial standards of due care with regard to check issued to a corporate payee); *Peavy v. Bank South, N.A.*, 222 Ga. App. 501, 505 (3) (474 SE2d 690) (1996) (where endorsement of a co-payee was missing, jury issue existed as to the bank's commercial reasonableness in accepting and paying on the check); *Stolle Corp. v. McMahon*, 195 Ga. App. 270, 272 (1) (393 SE2d 52) (1990) (hand printed corporate endorsement with misspelled name of appellant's employee may not have been sufficiently irregular).

"In short, under the facts of this case it cannot be said as a matter of law that the Bank [Appellants] did or did not act in a commercially reasonable manner. This issue can be resolved only by the tri[e]r of facts." *Thornton & Co.*, supra, 151 Ga. App. at 647 (4). Accordingly, we affirm the trial court's denial of Hale Haven's summary judgment motion in this case.

To summarize, in Case No. A18A0132, we affirm the trial court's denial of summary judgment to Auto-Owners on Hale Haven's reformation claim, and reverse the trial court's denial of summary judgment to Auto-Owners as to Hale Haven's

36

remaining claims. In Case No. A18A0134, we affirm the trial court's denial of Hale Haven's summary judgment motion on its reformation claim against Auto-Owners. In Case No. A18A0133, we vacate the trial court's denial of summary judgment to the Bank Appellants as to Auto-Owners' cross-claim and remand for consideration of whether that cross-claim was time-barred. We also affirm the trial court's denial of summary judgment to the Bank Appellants on Hale Haven's conversion claim. Lastly, in Case No. A18A0147, we affirm the trial court's denial of summary judgment to Hale Haven against the Bank Appellants as to its conversion claim.

*Judgments affirmed in Case Nos. A18A0134 and A18A0147, judgment affirmed in part and reversed in part in Case No. A18A0132, judgment affirmed in part, vacated in part, and case remanded with direction in Case No. A18A0133. Andrews and Brown, JJ., concur.*